HARNWELL *v.* WHITE.

Opinion delivered October 19, 1914.

1. LOCAL IMPROVEMENT—PETITION—RIGHT OF PROPERTY OWNERS—KIND OF IMPROVEMENT—POWER OF CITY COUNCIL.—Property owners have the right to and must designate in their petition the kind of improvement desired to be made, and a city or town council is without power to establish a district upon a petition praying for the establishment of an improvement different from that asked or prayed for in said petition.

2. LOCAL IMPROVEMENT—FORMATION—PETITION.—It is a necessary prerequisite to the establishment of any improvement district that a majority in value of the real property owners within such district, shall petition for such improvement, designating the nature of it.

3. LOCAL IMPROVEMENT — FORMATION — ILLEGALITY — ESTOPPEL. — The owner of property in an improvement district illegally organized, may by written agreement to pay the assessments levied against his property, estop himself to dispute the validity of the organization of the district.

4.   LOCAL IMPROVEMENT—ACTS OF PROPERTY OWNERS—ESTOPPEL.—When
an improvement district has been illegally formed, and a property
owner does some affirmative act, inducing persons to spend money
or surrender valuable rights on the faith of that conduct, the doc-
trine of estoppel will apply.

5.   IMPROVEMENT DISTRICTS—ESTOPPEL OF LAND OWNER—EXTENT OF ES-
TOPPEL.—Where a property owner is estopped by an agreement
made by him to deny the validity of the organization of an im-
provement district, the estoppel is limited to the express terms
of the agreement.

Appeal from Pulaski Chancery Court; *John E. Mar-
tineau,* Chancellor; reversed.

STATEMENT BY THE COURT.

Twelve suits were brought by the commissioners of
Improvement Districts Nos. 1, 2, 3 and 4 of Pulaski
Heights to subject certain lots, the property of Louise B.
Harnwell, to the payment of the assessments and liens
for improvement taxes in said districts.

After appellant's demurrer, motion to consolidate
the causes, and motion to dismiss were overruled, she an-
swered admitting the ownership of the lots and challeng-
ing the validity of the district because the petitions pray-
ing for it did not contain the majority in value of the
owners of real property in the district, because the ordi-
nance creating it was not legally passed, and because the
cost of the improvement exceeded the twenty per centum
of the assessed valuation of the realty in the districts,
and because all the districts were organized for the pur-
pose of making but the one improvement.

From the testimony and stipulations it appears that
the petitions asking for the improvement were signed by
the required number of property owners, residents of the
district, but that neither of them was signed by the ap-
pellant. The petition asked for the creation of Improve-
ment District No. 1, Pulaski Heights, "for the purpose of
grading, curbing, guttering and macadamizing the streets
within the town of Pulaski Heights," described in the
petition. The commissioners or board of improvement
were appointed and reported that they had organized by

electing a chairman, and, "that they have had estimates made of the expense of grading, curbing, guttering and macadamizing the streets in said district, and they find the expense of doing all these things will exceed the limit allowed by law to be expended by the commissioners of this improvement district. They therefore recommend that the work to be done by this improvement be limited to the grading of the streets in said district, each to be graded sixty feet wide. They have caused estimates of such grading to be made, and hereby report that the estimated cost of said grading will be the sum of $5,200.

(Signed)
"O. E. White, Chairman,
"T. J. Mahoney,
"H. F. Auten."

An ordinance was then passed fixing the assessment for Improvement District No. 1 for the purpose only of grading the streets in said district. The council authorized the formation of Districts Nos. 2, for the purpose of curbing and guttering the streets after they were graded; 3, for macadamizing the streets, and 4, to build sidewalks along the streets of the district. The ordinances creating all the districts progressed simultaneously; the same commissioners and the same assesors were appointed for each of the districts, and so far as it appears from the record, they were all organized by the council upon the original petition for the organization of Improvement District No. 1, upon which the board of improvement had reported that the contemplated improvement exceeded the 20 per centum of the assessed valuation of the property included, and recommended that the improvement therein be limited to grading the streets to the width of sixty feet. This was done after a mass meeting of the citizens had been held and had insisted with the commissioners first appointed that all the improvements should be made, and requested that they insist upon it before the council, which was done. The council, it appears, also passed an ordinance appropriating certain sums of money of the town to aid in the improvement. After the differ-

ent improvements had been undertaken, the question of
the legality of the districts arose and the commissioners
were not able to dispose of the bonds or borrow money
for making the improvements. They then prepared the
following instrument, one of which was executed by the
appellant:

"Know all men by these presents, that, whereas, Improvement Districts Nos. 1, 2, 3 and 4, in the town of
Pulaski Heights, for grading, curbing, guttering and macadamizing streets and building concrete sidewalks and
laying street crossings, respectively, in a certain district
in said town, said district having been created and the
benefits to the lands therein assessed, and said work begun and partially completed, and two of the annual assessments have been paid, and in order to complete said
improvements it is necessary for said districts to borrow
money and issue bonds, not exceeding, however, four
thousand, five hundred dollars ($4,500) for each district,
or eighteen thousand ($18,000) for all four districts combined, and

"Whereas, a question has been raised as to the legality of a part of said assessments, and it has been found
impossible to sell said bonds unless the property owners
waive said question and guarantee the payment of their
several assessments and 25 per cent thereof additional,
and the Union Trust Company, trustee, having proposed
to take said bonds secured by a pledge of all assessments
in said districts, provided the above mentioned waiver
and guarantee is given,

"Now, therefore, the undersigned, Mrs. Louise B.
Harnwell, being the owner of lots 1, 2, 3, 9, 10, 11, in
block 11, East Pulaski Heights Addition, and 4, 5, 6 and
8, in block 8, Pulaski Heights Addition to the city of Little Rock, assessed in said improvement districts, 1, 2,
3 and 4, of the town of Pulaski Heights, for said improvements, in consideration of the Union Trust Company of
Little Rock, trustee, buying or negotiating the sale of
said bonds, and the benefits to be received by said property from said improvements, do agree to pay assess-

ments thereon to the collector of said districts when due, not to exceed in the aggregate the sum of $350, except as hereinafter provided, and waive the question of the illegality of said assessments and of the lien thereof upon said property, up to, but not exceeding, that amount.

"We further agree, in case said assessments collected in said districts numbered 1, 2, 3 and 4 shall not be sufficient to pay said bonds, interest and costs of collection, if any, that we will pay the Union Trust Company, trustee, or its assigns, such additional sum as is needed to pay said bonds, interest and costs, not to exceed $87.50, being 25 per cent of the total assessment of benefits to said land, said sum to be a lien on the land described herein, of the same grade as an assessment for local improvements.

"It is understood that the limit of this guaranty, lien and waiver is $437.50, to be paid in annual installments at the rate now assessed.

Witness our hands this 28th day of September, 1908.

Mrs. Louise B. Harnwell.

The commissioners succeeded in procuring the loan or selling the bonds and the improvements were completed. Appellant paid all assessments against her property from the organization of the districts in 1906 until those due for the year 1913, for the collection of which these suits have been brought. The chancellor rendered a decree in favor of the commissioners of the district for the assessment and ordered the property sold and from the decree this appeal comes.

*C. P. Harnwell,* for appellant.

1. The evidence adduced by appellees was not sufficient to entitle them to a decree, and the demurrer should have been sustained. When the purpose of the original petition failed because of the 20 per cent limit imposed by law, the council lost all jurisdiction, and all subsequent ordinances and proceedings were void *ab initio.*

There was no legal consideration for the mortgages, but if valid, the property owners are not liable for the illegal assessments.

2. All the cases should have been consolidated. There was no occasion for twelve different suits to multiply costs.

3. None of the districts were legally organized. 59 Ark. 345-348, 360; 2 Page & Jones on Taxation by Assessment, § 800.

Appellant by her conduct did not waive her right to attack the validity of the districts, nor was she estopped. 59 Ark. 360; 58 Ark. 275. All the proceedings were void.

5. The signing of the mortgage did not waive illegalities in the formation of the districts.

*Terry, Downie & Streepey,* for appellees.

1. The conditions surrounding this improvement district make a different state of facts and a different case from that of *Watkins* v. *Griffith,* 59 Ark. 345, and calls for the application of a different rule.

2. It was proper to permit all the suits to be tried together, which the court did, but it would not have been correct to consolidate them, since there were four different districts, and a separate and distinct suit for each against the appellant.

3. The burden was upon the appellant to prove the invalidity of the proceedings by which the districts were organized. This burden, we think, has not been met; but in any case appellant is estopped by her execution of the mortgage to the trust company, and the specific waiver of all defects or irregularities in the proceedings for the organization of such improvement districts would affect its validity. 27 Atl. (Pa.) 8, 9; 53 Atl. 199, 200; 75 Atl. 756; 47 N. E. (Mass.) 1029, 1032; 14 Dec. Dig. § 319; 9 N. E. 723-735; 65 Barb. (N. Y.) 121; 7 Am. Rep. 143; 2 Herman on Estoppel, 1363; 48 Am. Rep. 438, 441; 43 Pac. 874, 875; 31 O. St. 592, 610; 50 Ark. 130, 131; 70 Ark. 451, 467, 470.

KIRBY, J., (after stating the facts).

(1-2) The requisite number of property owners petitioned for the establishment of the improvement district, specifying the purpose thereof, and a majority in value

of the owners of real property within the district, petitioned the council asking that the improvement be made and designating the nature of it for the purpose of "grading, curbing, guttering and macadamizing the streets included in the district," and the commissioners or board of improvement for the district were appointed. It was by the commissioners' report disclosed that the improvements could not be made within the limit of twenty per centum of the value of the real property in the district, thereupon the character of the improvement was changed and the four districts organized, three of them for the purpose of making each a portion of the improvement petitioned for and the fourth for making sidewalks, all upon the original petition asking for the single improvement and specifying it. The property owners have the right to and must designate in their petition the kind of improvement desired to be made and the city or town council is without power to establish a district upon the petition praying for the establishment of an improvement different from that asked or prayed for in said petition. And it is a necessary prerequisite to the establishment of any improvement district that a majority in value of the real property owners within such district shall petition for such improvement, designating the nature of it, and the law also provides that no single improvement shall be undertaken which alone will exceed in cost twenty per centum of the value of the real property within such district as shown by the last county assessment. Section 5683, Kirby's Digest. "Its purpose is to prevent improvement districts from undertaking any work which will cost more than one-fifth of the assessed value of the property therein, and whether the improvement can be made within this limit as to cost can, and must be ascertained from the outset. * * * The cost being ascertained, its comparison with the value of the real property within the district, as shown by the last county assessment, will disclose whether it exceeds twenty per centum of that value, and if it does, the improvement should not be undertaken, unless the plans can be

changed to reduce the cost within the statutory limit."
*Kirst* v. *Improvement District,* 86 Ark. 21. In *McDonald*
v. *Improvement District,* 97 Ark. 341, the court said:
"These sections of the statute (referring also to section
5716, Kirby's Digest) relate entirely to the matter of as-
sessments and the limitation is placed therein as a pro-
tection to the property owners against excessive assess-
ments. It is obvious that the Legislature meant only to
limit the amount which can be assessed against the real
property in the district. Neither does the city or town
council have authority to establish an improvement dis-
trict for a purpose substantially at variance with the
one prayed for, nor can the commissioners in the con-
struction of the improvement depart materially from the
one designated in the petition praying for and the ordi-
nance establishing the district." *Watkins* v. *Griffith,*
59 Ark. 344; *Kraft* v. *Smothers,* 103 Ark. 269.

After the commissioners reported that the improve-
ment prayed for and designated could not be constructed
within the cost of twenty per centum of the assessed
value of the real property within the district, as limited
by the statute, it should have been abandoned and the
council was without authority to authorize the establish-
ment of a district for the purpose of making only a part
of the improvement prayed for in the original petition
that contemplated the entire improvement designated
should be made and, certainly without authority to create
other districts upon such petition for the purpose of con-
structing different portions of the improvement prayed
for and designated in the original petition. It was the
evident purpose of the statute to permit those desiring
improvements made to designate the nature of the im-
provements to be undertaken for which the district
should be organized, that the whole improvement should
be seen from the beginning and that the cost of it should
not exceed the amount fixed by the statute. The manifest
intention of the law authorizing those who desire their
property assessed for the purpose of making a desig-
nated public improvement and limiting the cost of such

single improvement for their protection, as well as of all those who are required to pay, whether the improvement is desired by them or not, can not be evaded by splitting the entire improvement prayed for by the petitioners into separate sections or portions, and authorizing and establishing districts for the making of each portion that the single improvement undertaken may be within the cost limited by law. All the ordinances for the establishment of the different districts were without authority and void, and likewise the action of the commissioners thereunder. It is contended, however, that appellant is estopped to dispute the validity of the different improvement districts and escape the payment of the assessment levied therein on account of having received the benefits of the different improvements already constructed, and because of the instrument executed by her after the legality of the districts were questioned, waiving all irregularities in their formation and guaranteeing the payment of all of the assessments levied for the construction of the different improvements. We do not agree with this contention. Improvement districts are creatures of the law and can not be created by consent, waiver, estoppel, nor agreement of the property owners. They are governmental agencies, deriving their powers directly from the Legislature and can exercise no powers, perform no duties nor incur any liabilities except by authority conferred upon them expressly by statute. *Board of Improvement Sewer District* v. *Moreland,* 94 Ark. 381; *Lewis* v. *Rieff, et al.,* 114 Ark. 366.

The property owner has the right to rely upon the protection afforded him by the statute and to expect the organization of improvement districts in cities and towns and the levy and collection of assessments against his property in accordance with and as provided by law, and he is not estopped to deny the validity of any assessment against his property where the improvement district has failed to secure the power to make the levy in not complying with the terms of the statute authorizing its creation as in this case. Here the defects complained of are

not mere irregularities in the exercise of powers conferred upon the district but consist of failure on the part of the board of improvement to secure the power to make the improvement through the necessary prerequisite, the petition of the majority in value of the property owners of the district, and the appellant is not estopped to challenge the power of the district and the validity of the assessment because she has stood passively by and seen the improvement go on and paid all prior assessments levied against her property. *Watkins* v. *Griffith,* 59 Ark. 344.

Those interested in the collection of the assessment as compensation for the work done in making the improvements can not be said to have relied upon her acquiescence in the creation of the district since they knew in making the contracts with the board of improvement that they were dealing with a governmental agency without powers, except as expressly conferred by statute and whose authority they were bound to know. Neither was she estopped to deny the authority of the district, nor the validity of the assessments by reason of the execution of the said waiver and guaranty, since improvement districts are not created nor liabilities for assessments fixed, by estoppel, as already said. By the terms of this agreement or equitable mortgage she at most bound herself to the payment of the future assessments, specifying them in the amount limited therein with a lien against her property to secure the payment, and the extent of her liability is fixed by the instrument executed. When the improvement was constructed or finished and the moneys expended therefor upon the faith of her agreement, her right to successfully challenge the validity of the assessments levied by the district does not release her from the terms of this agreement nor relieve her from the payment of the amounts as agreed upon therein, but her failure to pay as and when agreed only subjects her property to the payment of the amount agreed to be paid and the usual cost for proceeding against it in the collection, and does not include any penalties or attor-

neys fees, there being no agreement to pay them. In other words, her liability is fixed by the terms of the agreement and mortgage executed by her and not by the statute relating to the collection of delinquent assessments in improvement districts.

Mr. Auten, one of the members of the alleged board of commissioners, testified that the contract was made with them for the purpose of borrowing money from the trust company to construct the improvement. Therefore they as individuals could bring a suit to recover on the contract and the additional designation of · themselves as commissioners is mere surplusage. The contract in question was introduced in evidence and its execution was admitted. The proper parties were before the court and the pleadings may be considered amended to conform to the proof. It is true the trust company was not made a party. It was a proper but not a necessary party. It knew that the contract in question had been made with Auten and others for its benefit, and would be bound by the decree.

It follows that the court erred in its decree which is reversed and the cause remanded with directions to consolidate the suits and to render judgment against the appellant herein for such sums of money as are due under the terms of the mortgage agreement with the foreclosure of the lien and the cost only of one suit for that purpose.

McCULLOCH, C. J., and SMITH, J., concur in the result.

CONCURRING OPINION.

McCULLOCH, C. J.

(3-4)  I agree entirely with the conclusion reached in this case by the majority of the judges, but I do not share with them all the views expressed in the opinion. I think the order of reversal, with directions to consolidate the different cases against appellant and render a decree for the amount of assessments due without penalty or attorneys' fees, is correct. The opinion states, however, in the most emphatic language, that this result can not

be obtained on the ground of estoppel, and the rule is laid down broadly that the owner of property in a district illegally organized can not estop himself to dispute the validity of such organization. That is the part of the opinion which I do not agree to, and I think that the decision reversing the case is wrong unless it can be put on the doctrine of estoppel. Indeed, I am unable to discover any other tangible grounds in the opinion. The instrument executed by appellant and others is not a mortgage, and, if it was so treated, the parties in interest were not before the court unless it be held that there was a *de facto* organization of the district which authorizes the commissioners thereof to sue. I do not view with favor any rule which applies the doctrine of estoppel to mere silence of a property owner with respect to the illegality of an improvement district; but where, as in this case, one or more property owners have done some affirmative act which induces persons to spend their money or surrender substantial rights on the faith of that conduct, there is no reason why the doctrine of estoppel should not apply. In the present case there was such an affirmative act of the highest character; for appellant, by a solemn contract, expressly agreed that she would not contest the validity of the district but would pay the assessments, and the bonds of the district were sold and the proceeds thereof used in constructing the improvement upon the faith of that agreement.

I think the authorities cited in appellee's brief abundantly sustain the doctrine of estoppel as applicable in a case of this sort; and in the case of *Matthews* v. *Kimball,* 70 Ark. 451, all of the judges (both those constituting the majority and the dissenting judges) agreed that the doctrine of estoppel would apply to one who had done some affirmative act in inducing the formation of the district.

In *Whipple* v. *Tuxworth,* 81 Ark. 391, this court held that there may be a *de facto* improvement district without *de jure* existence, and that such organization could sue and be sued; and the court applied the general doctrine that "a corporation *de facto* may sue and be sued,

and, as a rule, may do whatever a corporation *de jure* can do, and no one but the State can call its existence in question.'' That was the same district which was declared void on account of jurisdictional defects in *Board of Improvement* v. *Cotter,* 71 Ark. 556. Of course, the court did not hold that a property owner could not dispute the validity of his assessments on account of the illegality of the district, but decided that an illegally formed district had a *de facto* existence which authorized it to sue.

(5) Now, in this case, as in the one cited, the district had a *de facto* existence and the board of commissioners had the right to sue; and appellant has, by her express agreement, estopped herself to deny the validity of her assessment. But the estoppel is limited by the express terms of the agreement. Appellant only agreed to pay the assessments. She did not agree to pay any penalty or attorney's fees. And no one was injured by her conduct except to the extent of the assessments which she expressly obligated herself to pay. No one had any vested interest in the statutory penalty and attorneys' fees, and those items can not be enforced on the doctrine of estoppel. The equities of the case are completely satisfied by compelling the plaintiff to make good her obligation, and this the court has done in its order of reversal. Mr. Justice Smith shares with me these views.

McCULLOCH, C. J., (on motion to modify the opinion). The majority of the court now approve the concurring opinion. It thus becomes the law of the case, and to that extent the original opinion is modified. The decree of the chancery court is therefore reversed and the cause is remanded with directions to consolidate the actions against appellant and render a decree against her for the amount of the assessment and costs of one action, without penalty or attorney's fees.

HART and KIRBY, J. J., adhere to the views expressed in the original opinion, and therefore concur in the judgment, but not in the opinion of the court as it now stands.