THE TOWN OF AUGUSTA *v.* SMITH.

## Opinion delivered February 15, 1915.

1. IMPROVEMENT DISTRICTS—AUTHORITY OF CITY COUNCIL.—Municipal corporations can exercise only such powers, with respect to improvement districts, and the control thereof, as are conferred upon them by statute or by necessary implication.

2. LOCAL IMPROVEMENT—ASSESSMENTS—AUTHORITY OF MUNICIPAL CORPORATIONS.—Property acquired by local assessment is taken over by a municipality in trust for the property owners of the district, who are the real owners, and it is a breach of the trust for the municipality to attempt to part with the title or to delegate the performance of the trust to some one else.

3. ESTOPPEL—MUNICIPAL CORPORATIONS—SALE OF LIGHT AND WATER PLANT—ACQUIESCENCE OF CITIZENS.—Under a special statute a light and water plant was purchased by a local improvement district, and purchased therefrom by the city. After due notice and a mass meeting of the citizens approving the act, the city sold the plant to one B. *Held,* although under the statute, the city had no right to sell the plant, nevertheless citizens, who, by silence, acquiesced in the sale of the plant, are estopped to come into equity and seek to have the sale set aside.

4. ESTOPPEL—MUNICIPAL CORPORATIONS—SALE OF LIGHT AND WATER PLANT—EXTENT OF ESTOPPEL.—Athough the citizens of a city are estopped by their conduct to seek to have set aside the sale of a light and water plant by the city to an individual, nevertheless they are estopped only so long as the purchaser maintains and operates the plant in strict accordance with the terms of the contract of sale made with the city.

Appeal from Woodruff Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Harry M. Woods,* for appellant.

1.   The ordinance was void, and the ratification gave it no validity.   Dillon on Mun. Corp., § § 1301, 791-2; Pond on Pub. Utilities, § § 354-5, 348, 361-2; 16 Utah, 440; 160 Ind. 32; 7 S. D. 9; 71 Ark. 4; 86 *Id.* 1; 94 *Id.* 380; 109 *Id.* 90; 90 *Id.* 380; 93 *Id.* 490; 86 *Id.* 1; 71 *Id.* 4.

2.   There is no estoppel.   Dill., Mun. Corp., p. 797, § 777; 58 Ark. 271; 93 *Id.* 490; 83 *Id.* 276; 82 *Id.* 531; 126 Ia. 105; 117 *Id.* 258; 59 Cal. 517; 87 Wis. 496; 149 Mo. 36; 22 Mich. 104; Bigelow on Est. 754; 20 Wall. 655; 30 L. R. A. 848; 106 Mass. 549; Dill., Mun. Corp., p. 2455, § 1556.

3.   The city and taxpayers had a right to intervene. Dillon on Mun. Corp., § § 1579-80; 101 U. S. 601; 52 Ark. 545-7; 169 S. W. No. 12, *Seitz* v. *Meriwether,* 114 Ark. 289.

*Elmo CarlLee* and *Bratton, Fraser & Bratton,* for appellee.

(1)   There was ample authority for the transaction with Bratton, but, if not, (2) interveners are estopped, and (3) a court of equity will not entertain a bill for affirmative relief, by parties who stood by quietly and persuaded and encouraged a party to put money into a proposition, and then take the property away without compensation, or return of the money invested. 100 Ark. 588; 47 *Id.* 269; 67 *Id.* 36; 28 Cyc. 622; 22 W. N. C. 137; 216 Pa. 345; 5 O. St. 114; Dillon on Mun. Corp., § 1303; 94 Ind. 305; Kirby's Dig., § § 5442-3, 5448; 4 Wheat. 316; 80 Ark. 125; 47 Ind. 407; 14 Pa. St. 83; 16 Cal. 256; 76 Ark. 60; 87 *Id.* 389; 98 *Id.* 42; 28 Utah, 25; 70 Ia. 202; 103 Ga. 483; 15 A. & E. Enc., p. 1084.   He who seeks equity must do equity.   16 Cyc. 141; 46 Ark. 64; 34 *Id.* 630; 32 *Id.* 346.

*Manning, Emerson & Morris,* for Peyton Smith.

1.   The council had power to sell.   Kirby's Dig., § 4436-5675; Dill., Mun. Corp., vol. 3, § 991; 84 Pac. 760; 67 Atl. 844; 47 Ark. 269; 68 *Id.* 39-66; 100 *Id.* 588; 176

Fed. 86-8; 31 Ark. 728; 27 *Id.* 572; 68 S. E. 399; 81 Ark.
244. The doctrine of estoppel applies to towns and cities.
81 Ark. 244; 58 *Id.* 270, and cases *supra.* The intervener's
bill was properly dismissed.

McCULLOCH, C. J.   A light and water plant was con-
structed in the town of Augusta by a private corporation
under franchise granted by the city council, and in the
year 1909 an improvement district was formed in said
town for the purpose of raising funds to purchase said
plant and to maintain and operate the same. A special act
was passed by the General Assembly of 1909, ratifying
the organization and authorizing the purchase of the
plant and proceedings under the improvement district
statutes of the State with reference to levying assess-
ments, etc., and the statute also gave authority to issue
bonds and to mortgage the plant for the payment of the
price. Pursuant to the authority thus given, the organi-
zation of the improvement district was completed, assess-
ments were levied on property in the district, based upon
estimated benefits aggregating about $41,000, and the
plant was purchased and bonds executed to raise money
to pay the price, a mortgage on the plant being executed
according to the terms of the statute. Thereafter the
plant was taken over and operated by the town of Au-
gusta pursuant to the terms of the statute, which reads as
follows:

"In case of the construction of waterworks or gas
or electric light works by any improvement district or
districts, the city or town council after such works are
constructed shall have full power and authority to op-
erate and maintain the same instead of the improvement
district commissioners, and said city or town council may
supply water and light to private consumers and make
and collect uniform charges for such service, and apply
the income therefrom to the payment of operating ex-
penses and maintenance of such works." Kirby's Digest,
§ 5675.

It appears from the testimony in the case that the
operation of the plant was not altogether satisfactory

nor self-sustaining from a financial standpoint, and in January, 1913, U. S. Bratton entered into a contract with the town for the purchase of the plant and the operation thereof under a franchise to be granted to him by the town council. The deal was recommended by the board of improvement of the district and was discussed and ratified in a mass meeting of citizens which was, according to the testimony, very generally advertised in the town. Pursuant to this understanding, the city council passed an ordinance whereby it undertook to convey to Bratton the entire plant and all property connected therewith and to grant to him a franchise to operate the same for a term of fifty years. He agreed to enter into bond in the sum of $25,000, conditioned that he would pay the bonded indebtedness and interest thereon as the same became due and payable, and to furnish lights and water to the town for public purposes at a rate specified in the ordinance, and also to operate the plant according to certain regulations and schedules prescribed in the ordinance. It was also specified that Bratton agreed to change the electric light system from a direct to an alternating current and to pay the expenses of the change. Pursuant to this ordinance, Bratton executed a bond and took charge of the plant and operated the same until December, 1913, when appellee, Peyton Smith, one of his creditors, filed a bill in the chancery court alleging insolvency on the part of said Bratton and asserting a lien on the said property. Bratton had in the meantime, according to the testimony, gone to considerable expense in replacing machinery and in otherwise improving the plant. The town of Augusta and certain citizens and property owners intervened in the creditor's suit and alleged that the attempt on the part of the town council to convey the plant to Bratton was void, and asked that it be set aside and that possession be restored to the officers of the town. On final hearing the chancery court dismissed the intervention for want of equity and an appeal has been prosecuted.

The first contention is that the city council had no power whatever to sell and convey the light and water plant to Bratton, and counsel have, with great industry, brought to our attention the conflicting authorities on the question whether a municipal corporation has merely a proprietary interest in property of this character and has the power to sell and dispose of the same, or whether the ownership by the municipality is for strictly governmental purposes of a character which puts it beyond the power of the municipality to alienate the property so held in trust. There is a conflict in the authorities on that question, and, as it is not presented in this case, we find it unnecessary to discuss it.

(1-2)   What we have to determine now is whether or not the municipality has authority under the statutes to sell and dispose of a light and water plant constructed or purchased through the agency of an improvement district and turned over to a municipality pursuant to the terms of the statute just quoted. That presents an entirely different question from that of the power of a municipality to dispose of a light and water plant purchased by the city itself with funds raised by general taxation. In this case we are compelled to look to the terms of the statute itself for the purpose of determining whether or not the municipality had any authority to make the conveyance, for it is too well settled for controversy that with respect to improvement districts, and the control thereof, municipal corporations can exercise only such powers as are conferred upon them by statute or by necessary implication. *Morrilton Waterworks Improvement District* v. *Earl,* 71 Ark. 4. Now, the statute merely provides that in case of construction of a water or light plant (and this applies under the special statute to a purchase by the improvement district after construction through some other agency), the city "shall have full power and authority to operate and maintain the same instead of the improvement district commissioners." It is apparent that the Legislature intended to limit the city council to the operation and maintenance of the plant, and there is

nothing in the language of the statute which would extend the authority beyond that. Property acquired by local assessments is taken over by the municipality in trust for the property owners of the district, who are the real owners, and it is a breach of the trust for the municipality to attempt to part with the title or to delegate the performance of the trust to some one else. We are, therefore, of the opinion that the attempted sale by the town of Augusta was unauthorized, and this brings us to the consideration of the further question of estoppel.

The evidence shows that the contract was entered into in perfect good faith and within the knowledge of all the citizens and taxpayers of the town. A public meeting was held, after publication of notice, and further notoriety was given to the project after the mass meeting was held. It is inconceivable that any one in the town was unaware of the transaction. Bratton gave bond pursuant to the terms of the ordinance and entered upon the discharge of his contract and spent his money in its performance, and it would be grossly inequitable to permit any one who acquiesced in the transaction to come into a court of equity and seek to set it aside. We are of the opinion that the doctrine of estoppel applies, notwithstanding the fact that the sale was unauthorized.

In the recent case of *Harnwell* v. *White,* 115 Ark. 88, 171 S. W. 108, we applied the doctrine of estoppel, but that was a case where there had been an affirmative act done by a property owner of an improvement district in recognition of the validity of the district, and we held that he was estopped from thereafter disputing the validity of the district. The court declined to commit itself to the doctrine that mere silence on the part of a property owner would be deemed to be such acquiescence as would estop him from setting up the invalidity of the district. The present case, however, is not one in which the result turns upon the invalidity of the formation of a district, and it is a different proposition here from that involved when the property owner is resisting the collection of assessments against his property and he has

a right to stand upon the invalidity of the district. Mere silence there need not be construed as acquiescence, as the property owner is not always bound to speak under those circumstances. But here, where the property owners have stood by and in a manner acquiesced in the transaction, they are in no position to come into a court of equity to ask the court to undo that which has been done within their knowledge and acted upon to the prejudice of the other party.

(3) Counsel for appellant rely upon the case of *City of Newport* v. *Railway,* 58 Ark. 270, and like cases, where it is held that an *ultra vires* contract of a municipal corporation could not be ratified. Another such case as that is *Texarkana* v. *Friedell,* 82 Ark. 531. Those cases, however, involved the question of the right to sue the city at law upon an obligation arising upon a contract which was beyond the power of the city to enter into, and we held that there could be no recovery because there was a lack of power to make the contract or to ratify it. In each of those cases the municipality was defending itself against the enforcement of a contract which it had no power to make. In the present case, however, the municipality and these citizens, who by silence acquiesced in this contract, have come into a court of equity and asked affirmative relief and seek to have the contract set aside. They are in no attitude, as we have already said, to ask affirmative relief, for the reason that they are estopped by their conduct, and we are of the opinion that the chancellor was correct in his conclusion that they were not entitled to the relief they seek.

(4) Now, it is proper that we should inquire further how far the doctrine of estoppel goes in this case. The contract imposed certain obligations on the part of Bratton and he accepted the franchise upon terms. The estoppel of the appellees only goes to the extent of closing the door on their objection so long as the contract is being performed, and it would be inequitable to extend the doctrine of estoppel any further than that. *Harnwell* v. *White, supra.* In other words, the property owners

acquiesced in the contract that was made, which can not be sustained as an absolute sale of the property in the sense that it may be disposed of and the plant dismembered. It was turned over to Bratton for the purpose of operating under a franchise, and any attempt on his part, or on the part of his successors in interest, to divert it from the use for which it was turned over, would constitute a breach of the contract, and would absolve the town and the property owners from the implied obligation to permit him to perform the contract. The estoppel will end when the reason for it ceases, which will not be as long as the plant is being operated under the franchise and for the benefit of the public according to the plan for which it was constructed. Those who have dealt with Mr. Bratton are deemed to have had knowledge of the limitations upon his right to incumber the property and no creditor has greater rights than he has. It was not sought, in the proceedings into which the appellants intervened, to dismember the plant or to divert it from its proper uses. The remedies of creditors are subordinated to the public rights, which are fully preserved under the contract. Nor would the estoppel bind the appellants in the event of the failure of Bratton to make good his obligation to pay off the bonds outstanding against the district. The plant is mortgaged to secure those bonds, and, in addition to that, the property owners are liable to the extent of the estimated benefits to their property; and if the property was about to be subjected to the enforcement of the assessments in order to pay for the bonds, they would be no longer bound by their implied acquiescence in the contract between Bratton and the town.

The decree is therefore affirmed.