**TREES, et, Plaintiff, v. LOOMIS, Mayor et, Defendants.**

Common Pleas Court, Madison County.

No. 20378.   Decided May 15, 1957.

566

Waite, Schindel & Bayless, Cincinnati, Jackman, Nichols & Grubbs, Local Counsel, London, for plaintiff.

John R. White, D. Bruce Mansfield, Akron, for defendants Ohio Edison Company.

Gilbert Kirby, Plain City, for defendants The Farmers National Bank and Village of Plain City.

William S. Culp, West Jefferson, for defendants Ohio National Bank of Columbus, Ohio, Trustee.

**OPINION**

By BAYNES, J.

This cause came on for consideration on the demurrer of the Ohio Edison Company and demurrer of the Village of Plain City to plaintiff's second amended petition. The plaintiff seeks to have the sale and conveyance of the village's electric generating and distribution system declared void and seeks equitable and declaratory relief, apparently, in the form of a mandatory injunction.

The grounds of the demurrers are:

"1. It appears upon the face of the petition that the facts therein contained do not constitute a cause of action in favor plaintiff and against the defendants.

"2. It appears upon the face of the petition that plaintiff has not legal capacity to bring this action."

For purposes of the demurrers the admitted facts are:

The plaintiff, resident of the Village of Plain City, is a taxpayer and user of electric energy formerly supplied by the village and now supplied by Ohio Edison. He brings suit on behalf of the village and other residents and users of electric energy similarly situated.

That the village has never adopted a Charter form of Municipal Government as authorized by **Section 7, Article XVIII, Ohio Constitution.** That the village operated an electric generating and distribution system. That on 18 June 1956 the village council adopted an ordinance, declared for reasons stated therein, the system was no longer needed for municipal purposes. It directed the Clerk to advertise for bids to sell the system, other than land and buildings, for two consecutive weeks in the village newspaper. Section 5 of the ordinance provided:

"The Mayor and Clerk are directed to sell the property so advertised to the highest and best bidder therefor, provided such bidder shall first have furnished satisfactory information as to its generating facilities and other sources of power supply, its transmission facilities generally and particularly in the Village of Plain City, its equipment and resources for providing and maintaining electric service, its financial ability and resources, its special services for its customers, the terms and conditions upon which it will provide electric service, and generally as to its ability to provide adequate and satisfactory electric service to the village and to its inhabitants both now and in the future."

The legal notice among other things, stated that bids would be received until 6 July 1956, required a payment of 25% of the cash amount of the bid and reserved the right to reject any and all bids. The legal notice was published 20 June, 27 June and 4 July 1956. Ohio Edison submitted the only bid in the amount of $410,000.00. On 9 August 1956 the Mayor and Clerk on behalf of the village executed a "Sale Agreement."

On 20 August 1956 plaintiff requested the Village Solicitor to bring an action for injunction against the Mayor, Clerk and Members of Council to restrain them from executing any contract under the ordi-

nance which he claimed was illegal. The Solicitor refused on the same day to bring any action.

Plaintiff filed his petition on 6 September 1956 naming only the Mayor, Clerk and Members of Council as defendants, who were served with summons on 7 September 1956. No temporary restraining order was prayed for. On 14 September the village received the balance of the purchase price and conveyed to Ohio Edison, its electric generating and distribution system, other than land and buildings. It immediately began furnishing electric energy from power sources other than the generating facilities purchased.

It is also admitted that the management of the village electric generating and distribution system was under the Board of Trustees of Public Affairs; (see §735.28 R. C. e. s.). As indicated, this board took no part in the sale of the electric generating and distribution system and the ordinance did not refer to the board; (see §§721.01, 721.03 and 721.15 R. C.)

Some preliminary observations should be made with respect to the allegations of the second amended petition.

There is no allegation that the ordinance was:

1. "Ultra vires" or without any authority in law;

2. Conceived in fraud or that there was fraudulent inducement or fraud in the execution;

3. An abuse of discretion on the part of the village legislative authority;

4. Inadequacy, unfairness, or unreasonableness of consideration; or

5. That the defendant Ohio Edison Company, since the sale, has failed to provide adequate or satisfactory service, or that its service is below the standard of the village service; or

6. That the rates for electric service, now furnished by Ohio Edison, are higher than the village rates or that the company rates are unfair or unreasonable; and

7. That the rates have not been established by ordinance of the village legislative authority.

In addition, it being elementary that a demurrer admits only such facts as are well pleaded and not legal conclusions or pleaders' conclusions based on facts alleged, the following allegations are subject to comment.

First, the allegation that the village is "governed by the General Laws of the State of Ohio," as it has no particular or specific meaning with respect to particular statutes. Some statutes may be applicable or inapplicable and some may be ineffective or without meaning, as applied to the facts of this case.

Second, the 16th paragraph of the second amended petition alleges:

"The foregoing acts of the defendants will result in great damage and loss to said village, to taxpayers and electric users, consumers and electric rent payers, for which there is no adequate remedy at law."

As will be observed from the above numbered seven items of un-alleged facts, neither plaintiff, or the class he purports to represent, allege any amount or any particular damage or loss arising out of the Ordinance, or its execution.

Whether or not it is proper or improper, necessary or unnecessary, in a case such as this, to allege that plaintiff has no adequate remedy at law, such inadequacy must appear from the allegations. It cannot be considered a well pleaded fact, at least standing alone, for purposes of testing the demurrer.

Under the first ground of the demurrer that the facts do not state a cause of action proponents claim:

1. That within the (self executing) provisions of **Article XVIII, Ohio Constitution** the Village had plenary power to make the sale without limitation, control or restriction of any statute.

2. There is no requirement that the Ordinance of Sale must include provisions for franchise and schedule of rates of service.

3. That the petition alleges no damage to plaintiff or anyone else.

Under the second ground of demurrer that plaintiff lacks the legal capacity to maintain the action because he alleges no special interest because his property rights are, or have been placed, in jeopardy.

In addition to these objections it seems to the Court that there are other grounds, under the heading that the facts do not state a cause of action. First whether or not plaintiff has an adequate remedy at law and second whether on the facts plead, estoppel or laches lies.

We construe the second amended petition as raising no question of the substantive power of the village to dispose of its electric service utility. **Section 4, Article XVIII, Ohio Constitution,** provides that municipalities may acquire any public utility. This section makes no reference to a constitutional power to dispose of a public utility. Constitutionally, or otherwse, the power to dispose has never been questioned.

**Section 2, Article XVIII** provides that general laws shall be passed to provide for the incorporation and government of cities and villages. Title VII of the Revised Code of Ohio has been generally enacted under this Section. Chapter 721 of the Title sets forth the manner in which sales or leases of municipal property shall be carried out. It does not, in terms, refer to sales of utility property, except by implication, if at all; see **28 O. Jur. 100, 104, Secs. 63, 65;** McQuillin Municipal Corporations 3d ed. v. 12, 638, 677, Sec. 35.27, 35.35. Assuming, but not deciding, it applies to proprietary property, it does not aid plaintiff.

As to both sales of real and personal property, not needed for municipal purposes, §§721.03 and 721.15 R. C., provide that it must be authorized by legislative authority and approved by the Board or Officer having supervision of it. Clearly this means, and can only mean, that the supervisor of the property has only ministerial duties in connection with the sale. Furthermore, that these sections, in this ministerial aspect, are directory and not mandatory. As to utility property, here involved, we so hold.

Whether or not **Section 4, Article XVIII,** taken in conjunction with Section 3, the Home Rule Section, is self executing; or whether the power of sale must be exercised within the terms of **Section 2, Article XVIII** and **Chapter 721 R. C.,** we do not find it necessary to decide. Despite counsel's voluminous Briefs, we perceive no Constitutional question in the determination of this case whatsoever.

It may be profitable to refer to one case, cited by neither counsel,

to support this conclusion. **Geiger v. Kobe, 60 Abs 555, 102 N. E. 2d 481,** appeal dismissed and motion to certify overruled **156 Oh St 189 (1951),** 101 N. E. 2d 501, 46 O. O. 59, cited McQuillin Municipal Corporations 3rd ed, v. 12, 683, Sec. 35.36, cum, Sup. n. 35 involved the sale of Berea's antiquated electric generating and distribution system.

A taxpayer's suit sought to enjoin the Mayor and Director of Public Service from executing a sale, exclusive of land and buildings, ordinance enacted by initiative petition. The trial court, affirmed by Court of Appeals, held that such a sale requires legislative authority and that the initiated method was proper.

Secondly, that the sale ordinance did not have to provide for a franchise to the successful bidder. (Emphasis ours.)

The Court of Appeals said at page 558 (Abs.):

"We also find that plaintiffs' contention that the initiated ordinance passed under authority of **Article II, Section 1(f), Ohio Constitution** violates the provisions of §3698 ((now §721.01 R. C.)), §3699 ((now §721.03 R. C.)), and §3703 GC ((now §721.15 R. C.)), is not well taken. We affirm the finding of the trial court on that question for the reasons stated in the opinion of the court."

An examination of the original papers, in the office of the Clerk of the Supreme Court of Ohio, discloses the only essential difference between the Geiger case and the instant case is that the Berea Ordinance provided that the Director of Public Service was to sell the property rather than a Board of Trustees of Public Affairs; (Appellee's Brief p. 38). Section 2, (Appellant's Brief p. 72), did not provide for the Director's approval or consent, it provided:

". . . he hereby is authorized and directed to advertise . . . and to sell the same to the person, firm or corporation submitting the highest bid substantially in accordance with such specifications."

In addition Section 3, (9) of the ordinance reserved the right, in City Council, to reject any and all bids. (Emphasis ours.)

Nothing in these original papers indicates any contention was made that the sale need be approved by the Director. The Director in effect was given no power to exercise judgment as to the wisdom or lack of wisdom of the ordinance. He acted solely as a ministerial and not a policy making officer, the same as the Mayor and the Clerk of Plain City in the instant case.

We do not construe §§721.01, 721.03, 721.15 or 735.29 R. C., as vesting the Board of Trustees of Public Affairs with any policy authority whatsoever with respect to whether a municipal corporation shall continue to operate any public utility or to acquire or dispose of any public utility. That power, among others affecting the operation and duties of the Board of Public Affairs, rests solely with the Village Legislative Authority.

Two cases are cited by plaintiffs in support of their contention that the power exercised by the Village Legislative Authority was by an invalid ordinance, because it did not provide for approval of the Board of Public Affairs. One is, **Village of Manchester v. Shriver, 113 Oh St 171,** 148 N. E. 697 (1925). This case enjoys the dubious distinction of never being cited in any subsequent state report.

It was an action in mandamus to compel the Board to execute a contract of sale of the electric generation and distribution system provided by ordinance. There is no syllabus. The question of the case is stated at **page 174 (Oh St)**:

". . . whether the facts set out in the amended petition show . . . the board . . . are refusing to perform a duty specially enjoined upon them by law."

The law of the case is stated at **page 175 (Oh St)**:

"**Before municipal authorities are authorized,** much less required, **to sell any property** belonging to a municipality, **it must appear that such property is not needed for any municipal purpose. There is no such averment in the petition.**" (Emphasis ours.)

The court's statement as to the controlling statutes §§3698 and 3699 GC (now §§721.01 and 721.03 R. C.) is pure dictum.

The reason why it must appear that property ordered sold is not needed for municipal purpose is not necessarily because the statute says so, but because to sell otherwise would be without reason and an obvious abuse of legislative or ministerial discretion, so as to amount to fraud or wrongdoing and a violation of established common law principles.

Plaintiff quotes extensively from Case No. 17,962 Common Pleas Court of Clinton County, Ohio, styled Village of Sabina v. Board of Trustees of Public Affairs, decided 4 February 1957. No report citation is given.

The action was one for declaratory judgment on the ordinance passed to provide for sale of the village electrical and water system. The Board refused to execute the ordinance.

The opinion relies on the Manchester case dictum, which we have discussed. It also relies on **Morris v. Roseman, 162 Oh St 447, 123 N E. 2d 419, 55 O. O. 255.** Both parties relied on it in the Sabina case, as the parties seem to in this case. It suffices to say that we do not find the Sabina case persuasive.

Irrespective of whether we are correct on our failure to find a constitutional question in this case and our interpretation of the provisions of Chapter 721, it is the opinion of this Court that the petition fails to state a cause of action because plaintiff has failed to bring his case within principles under which equitable relief may be granted.

Equity suits against a municipality are viewed within the usual rules of practice. They are proper only for the purpose of supplying a deficiency of legal remedy. If there is, or was, an adequate remedy at law equity will not intervene. The fact, if it is a fact, that an ordinance is invalid is not, per se, a basis of equity jurisdiction. McQuillin Municipal Corporations 3d ed., v. 17, 271, Sec. 49.50.

"The general rule is that no act of a municipal corporation, within the sphere of its powers, which is free from fraud or collusion, and which involves the exercise of administrative or legislative discretion on the part of the municipal authorities will be restrained by injunction, unless there is an abuse of discretion resulting in damages or oppression to an individual or his property or his rights therein.

". . . There should be a showing of special injury; . . . **the writ will**

be denied if the act sought to be enjoined has become an accomplished fact." (Emphasis ours.) ibid 275, Sec. 49.51.

A taxpayer's suit stands on no higher ground than a suitor in equity generally. To support a taxpayer's action it must appear that the act complained of is illegal, or that there exists fraud, corruption or wrongdoing; McQuillin, Municipal Corporations 3d, v. 18, 23 Sec. 52.07.

"It is generally held that a taxpayer's suit does not lie if there is an adequate remedy at law, and the inadequacy of the remedy at law is often relied on as a ground for equitable relief. . . .

"A fundamental principle governing exercise of equitable jurisdiction is that equity will not act where the remedy at law is adequate, where a full measure of relief is available through mandamus." (Emphasis ours.) ibid, 23, Sec. 52.08.

Where is there any allegation that plaintiff has exhausted or even attempted any legal remedy? Equity follows the law, and its remedies were never intended to be used, or are they used, to extend the time in which an act should or must be done.

At the same time (3 September 1912), the other present Sections of Article XVIII, Ohio Constitution, were adopted there was also adopted Section 1 (f), Article II:

"The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

Secs. 731.28 e. s. R. C., implement this provision and any ordinance except appropriations for current expenses, street improvements assessed against abutters according to the benefits and an emergency measure, is not effective until after 30 days following its passage and approval. It requires only ten per cent of the voters who voted at the preceding general election for governor to invoke the referendum provisions. In the case of Plain City this would have required only 69 valid signatures. The fact that referendum provides a legal remedy has been frequently recognized; see e. g., Youngstown v. Aiello, 156 Oh St 32, 37, 100 N. E. 2d 62, 45 O. O. 45.

Mandamus as a proper legal remedy has been frequently recognized; see e. g. State v. Milan, 133 Oh St 499, 14 N. E. 2d 772, 11 O. O. 187, McQuillin Municipal Corporations 3d ed., v. 6, 53 Sec. 20.24. An action in mandamus to test the ordinance could have been brought any time between 18 June and 9 August 1956.

Of course, by 6 September it was too late for the plaintiff to exercise either of these legal remedies. This failure violates the well established equitable rule that, "Equity Aids The Vigilant." This principle operates not only negatively, but also affirmatively; 20 O. Jur. 2d 154, Sec. 73.

A taxpayer may be estopped to bring a taxpayer's suit because of his acquiescence or other conduct; McQuillin Municipal Corporations 3d ed. v. 18, 42, Sec. 52.15.

Although it is not alleged in the petition, it is a matter of common knowledge that plaintiff, a resident of Plain City for thirty years, is,

and has been, a member of the Board of Trustees of Public Affairs for many years. As a matter of judicial notice the Village population in the 1950 census was 1715.

In Town of Augusta v. Smith, 117 Ark. 93. 174 S. W. 543, in a case involving a sale and conveyance of the town's light and water plant in January 1913, taxpayers in December 1913 attempted to intervene in a pending action (by a creditor) against the plant purchaser and operator alleging that the prior sale was void, asked that it be set aside and possession be restored to the town. The Chancellor dismissed the intervention for want of equity. The Supreme Court of Arkansas on affirming the trial court said at page 545 (S. W.):

". . . the contract was entered into in perfect good faith and within the knowledge of all the citizens and taxpayers of the town. . . . We are of the opinion that the doctrine of estoppel applies, **not withstanding the fact that the sale was unauthorized.** (Emphasis ours.)

". . . Where the property owners acquiesced in the transaction, they are in no position to come into a Court of equity to ask the Court to undo that which has been done within their knowledge, and acted upon the prejudice of the other party."

Ohio has long recognized the principle of estoppel where one party with knowledge of the facts has stood by without asserting his rights while others have incurred large expenditures or detriment by reason of such silence, which will be wholly or partially lost if such rights or objections are subsequently given effect; **20 O. Jur. 2d 515, Sec. 51; cf., Vollmer. Taxpayer v. Village of Amherst, 140 Oh St 257, 261, 43 N. E. 2d 236, 23 O. O. 461.**

This principle has particular application in matters of public concern, as in the instant case, where equitable relief is sought. Plaintiff was bound to know the financial and operational problems faced by the village in the continued operation of the electric utility. His failure to name Ohio Edison as a party to the suit on 6 September 1956, when the transfer of the utility took place on 14 September and the acceptance of its offer of purchase being effective on 9 August 1956, and in fact not naming them as a party until 7 December 1956 and then only at the insistence of the Court, is illustrative and finds no favor in a Court of equity.

Plaintiff's failure to avail himself of his remedies at law has imposed a hardship on the Ohio National Bank as Trustee. The Bank received $110,235.00 of the purchase price to pay the principal and interest on the Village Light Plant First Mortgage Revenue Bonds. How many of the bonds have matured in the interval or interest payments come due we do not know.

In consequence the bank on 14 September 1956, as Trustee, under a mortgage indenture, released two real estate and two chattel mortgages which were first liens upon the real and personal property used in generating and distributing electricity by the Village.

The Farmers Bank of Plain City merely holds the balance of the purchase price under a depository contract and has been required to answer, although it has no interest in the proceedings whatsoever.

574

In conclusion, courts may not substitute their judgment for that of Legislative Authority; 28 **O. Jur. 195, Sec. 106.**

Counsel for the Ohio Edison Company is directed to promptly prepare an Entry accordingly, submitting it to other counsel and the Court, finding that the demurrer should be treated as a motion to dismiss the petition and ordering it to be sustained in that the facts alleged state no cause of action, the Ordinance being found valid; that plaintiff failed to pursue his legal remedies; and that plaintiff is estopped to seek equitable relief. Further it is sustained for failure of operative facts from which special injury to plaintiff or others in his class or general injury to the Village might be found—**by reason of the execution of the provisions of the ordinance**—so that plaintiff has no legal capacity to maintain the suit. Costs should be taxed to plaintiff and his exceptions noted.

Ohio Appeals, Second District, Madison County.

No. 235. Decided July 27, 1957.

## OPINION

By THE COURT:

On May 29, 1957, a notice of appeal was filed from a judgment of the Court of Common Pleas, signed by Waite, Schindel & Bayless, and Herbert Shaffer; Jackman, Nichols and Grubbs as attorneys for appellant. On June 13, 1957, Leslie R. Trees, Appellant, applied to this Court for an order dismissing him as a party and discharging him from liability from costs or any other liability as a result of the appeal filed. He accompanied the application with an affidavit substantially to the effect that affiant on or about June 5, 1957, wrote a letter to Waite, Schindel, Bayless and Schneider or Jackman, Nichols and Grubbs, to the effect that it was appellant's impression that the decision in the Common Pleas Court was final; that he had learned that a notice of intention to appeal the case was filed; that he was not consulted in the matter before it was done and that it was not his desire to carry the case to a higher court; that he desired to serve notices on the firm of

Waite, Schindel and Bayless that it should no longer represent him; that notwithstanding the notice and its receipt by the attorneys who represented him, they nevertheless on June 10, 1957, filed in this court assignments of error and brief and that affiant does not desire to appeal; that he has no intention of doing so and that it was filed without any consent on his part.

It appears that the letter to which reference is made in the affidavit was not received by the firm of Jackman, Nichols and Grubbs. An affidavit of Herbert Shaffer has been filed under date of June 22, 1957, to the effect that he is a partner in the law firm of Waite, Schindel, Bayless and Schneider. That affiant employed D. H. Jackman, London, Ohio, as associate counsel who has acted as such at the time of the filing of the original petition and ever since with the understanding that Mr. Trees would not be personally liable for services rendered by Mr. Jackman in this taxpayer's litigation; that by numerous acts, Mr. Trees has ratified this employment of associate counsel; that the employment of affiant and his firm was to bring and prosecute the taxpayer's action on behalf of the village of Plain City to prevent the sale of the municipal electric utility of the village under an ordinance which was set forth in the petition; that the said employment was broad and general and not limited or restricted, * * * with the understanding and agreement that Mr. Trees would not be personally liable for any attorneys fees for services rendered; that the affiant understood said employment gave him implied authority to take all steps and to do all acts necessary or incidental to the regular and orderly prosecution or management of the litigation until the final adjudication of the legal questions involved in the courts of Ohio.

An unsigned memorandum is filed under date of July 22, 1957, and with it a letter from the firm of Jackman, Nichols and Grubbs by Mr. D. H. Jackman to the effect that if the letter to the Cincinnati firm "is effective to discharge him as counsel for plaintiff, it is not effective to discharge me as counsel for the reason that my name was not mentioned in the letter and I have not, at any time, received a letter of dismissal from the taxpayer. However, my original employment was through Mr. Shaffer as associate counsel and I do not know definitely my own status in the case."

Mr. Jackman asserts that he is willing to sign the memorandum as counsel for appellant.

The gravamen of the affidavit is that when the notice of appeal was filed, Mr. Jackman had no notice that he was no longer to represent appellant. It is urged that attorneys of record for the plaintiff in the trial court by their general employment in the taxpayer's litigation, had the authority to file the notice of appeal in carrying out the purpose of such litigation. It is urged that the real matter in controversy is the authority of municipal officers to sell public property of the village "in disregard of statutes of Ohio prescribing the procedure for the exercise of such power."

It is further urged that the case directly concerns the public interest and public property and that this court has the power to grant or deny

dismissal or to dismiss upon certain conditions. It is insisted that the appeal should be retained upon the ground of public interest for the purpose of passing upon the validity of the ordinance and the sale.

The court has authority in taxpayers suits in the interest of justice to refuse to dismiss an appeal where others qualified to institute the action and who will be adversely affected by the dismissal, as well as the nominal plaintiff have with the knowledge of the court intervened in support of the cause of action of petitioner. However, in this case, no person other than Mr. Trees, as a taxpayer, is named as party plaintiff and no one has appeared in this court other than counsel who have represented Mr. Trees to urge the cause of the class for whom the action is claimed to have been instituted.

There is no issue as to the purpose of the plaintiff to dismiss the appeal. Although the action of Mr. Jackman in filing the notice of appeal was not in violation of any instruction from his client, it now appears, and has so appeared from the formal notices of Mr. Trees to this court, that neither the Cincinnati firm nor Mr. Jackman is authorized to represent him on the appeal. Nor does it appear that any individual has sought to intervene in behalf of the class which Mr. Trees as plaintiff sought to represent.

Although taxpayers in the village of Plain City are affected by the judgment appealed from, we may not assume that any taxpayer considers himself adversely affected unless and until he by some action so indicates. As the record comes to us when the plaintiff dismisses his appeal, there is no known taxpayer of the village of Plain City who desires to be substituted as party plaintiff.

In this situation, we find no compelling reason to attach any condition to the dismissal of the appeal requested by the plaintiff.

There is a case, Berheim, et al v. Wallace, Judge (Ky.), 8 A. L. R. 938 and annotation, which throws some light of adjudication upon our question. The first syllabus of this case holds:

"1. A minority stockholder of a corporation, suing on behalf of himself and other minority stockholders, may dismiss the action without prejudice at any time while it is pending on appeal, before decision is handed down, both as to himself and all whom he represents."

It is said in 17 Am. Jur., Page 63, paragraph 11, Dismissal and Discontinuance:

"It seems clear that after a plaintiff institutes a representative suit in behalf of himself and other persons and some one or more of the persons on whose behalf such suit is brought intervene in the action, the original plaintiff cannot dismiss the entire action."

The request for a conditional dismissal will be denied and an order dismissing the appeal on behalf of the plaintiff may be entered.

HORNBECK, PJ, WISEMAN and CRAWFORD, JJ, concur.