ARKANSAS LIGHT & POWER COMPANY *v.* COOLEY.

Opinion delivered April 21, 1919.

1. ELECTRICITY—WATERS AND WATERCOURSES—EFFECT OF FRANCHISE.
—A franchise granted by a city council to a public service company to supply water and light to the city and its inhabitants at certain rates, when accepted, becomes a contract between the municipality and the grantee, and the conditions therein are binding, the same as the terms of any other contract, both on the municipality and the company.

2. MUNICIPAL CORPORATIONS — ORDINANCES — YEA AND NAY VOTE.—Under Kirby's Digest, section 5473, providing that, on the passage of an ordinance to enter into a contract by any council of any municipal corporation, the yeas and nays shall be called and recorded, ordinances providing for a raise in water and light rates, in the passage of which the yeas and nays were not called, are void.

3. ELECTRICITY—WATERS AND WATERCOURSES—MODIFICATION OF CONTRACT.—A franchise granted by a city to a public service company of a right to furnish water and electric lights, being a contract between the city and the company, may be modified by an ordinance raising the water and light rates, when accepted by the company.

4. CONSTITUTIONAL LAW—VESTED RIGHTS IN CONTRACT.—A grant of a franchise by a city council to a public service company to furnish water and light at stipulated rates to the inhabitants does not give the property owners such a vested right as will entitle them to enjoin the company from raising its rates in accordance with a subsequent ordinance.

5. MUNICIPAL CORPORATIONS—LEGISLATIVE POWER.—A city council, in the exercise of its legislative power, as in granting or modifying a water and light franchise, is vested with a discretion which can be controlled by the courts only after abuse.

Appeal from Clark Chancery Court; *Jas. D. Shaver,* Chancellor; reversed in part.

STATEMENT OF FACTS.

C. F. Cooley, a resident and property owner of the city of Arkadelphia, brought this suit in equity on behalf of himself and all other persons whose rights are similarly affected, against the Arkansas Light & Power Company for cutting off the light and water furnished by that company. The facts are as follows: On September 10,

1914, the city council granted the Arkansas Light & Power Company a franchise to establish and operate in the city of Arkadelphia an electric light system for a period of fifty years, and in the ordinance granting the franchise, a maximum rate was established which the company was permitted to charge private consumers. The franchise was accepted by the company and it has operated under it ever since. At the same time and for the same period of years the said company was granted a franchise to provide for a water supply to the city of Arkadelphia and the inhabitants thereof. The rates which the company might charge private consumers were prescribed in the ordinance. This ordinance was accepted by the Arkansas Light & Power Company and it has operated a waterworks system under it ever since.

On August 5, 1918, the common council of the city of Arkadelphia passed an ordinance empowering the said company to make a greater charge for electric lights during the period of the war between the United States and Germany and for six months after the termination of said war. A like ordinance was passed at the same time providing for an increase of rates for the water furnished private consumers. The records of the city council do not show that the yeas and nays were called and recorded on the passage of either of the ordinances of the date of August 5, 1918, raising the rates to be charged by the company respectively to consumers of electric light and water.

C. F. Cooley was a resident and property owner in the city using both electric light and water from the company. He refused to pay the increased charges provided for in the ordinance of August 5, 1918, and the company threatened to cut off his electric lights and water for his failure so to pay. Hence this lawsuit.

The chancellor was of the opinion that the ordinances of August 5, 1918, providing for an increase of water and electric light rates were not passed by the city council in the manner provided by law and were therefore void.

It was therefore decreed that the Arkansas Light & Power Company be perpetually enjoined from discontinuing the services of water and electric current to C. F. Cooley on account of his failure to pay the increased rates for water and light provided for by the ordinances of August 5, 1918.

The defendant company has appealed.

*Callaway & Huie,* for appellant.

The city council in the passage of the two ordinances were exercising the "police power" of the city. Unless they were contractual they are *prima facie* valid. The minutes of the city show that they were ·duly passed and recorded. Certified copies were duly introduced in evidence. Kirby's Digest, § 5471; 116 Ark. 125; 94 U. S. 113; 143 *Id.* 517; 219 *Id.* 104; 233 *Id.* 389; 204 S. W. 386; *Ib.* 1074; 31 Cyc. 902; 28 *Id.* 692. The two ordinances were duly passed and constituted a contract between the citizens and the appellant. They were accepted by the grantee and bound the grantee for a term of years and gave it six months to comply with the terms of the contract, and the decree should be reversed.

*T. N. Wilson* and *McMillan & McMillan,* for appellee.

1. The ordinances were both void. Kirby's Digest, § 5473. The "ayes and nays" were not called and recorded. 40 Ark. 105; 105 *Id.* 506-511. The provision is mandatory and the record shows that the yeas and nays were not called and recorded. 105 Ark. 506-511.

2. The original franchises were contracts. Kirby's Digest, § 5448; 101 Ark. 223. The amendatory ordinances resulted in granting new franchises and were not passed as prescribed by law. Kirby's Digest, § 5448; 75 Ark. 340. The council had no power to increase the rates. 5 Ark. 595-599; 101 *Id.* 223. The ordinances should have been submitted to a referendum vote. Act March 6, 1913, Acts 1913, p. 562.

HART, J., (after stating the facts). The chancellor was right in holding that the ordinances of August 5,

1918, providing for a raise in water and light rates were void because upon their passage the yeas and nays were not called and recorded. A grant by a city council to a public service company of a franchise to supply water and light to a municipality and the inhabitants thereof at certain stipulated rates when accepted becomes a contract between the municipality and the grantee, and the conditions therein are binding, the same as the terms of any other contract, both on the municipality and the company. *Lackey* v. *Fayetteville Water Co.,* 80 Ark. 108; *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223, and McQuillin on Municipal Corporations, vol. 4, par. 1672.

Section 5473 of Kirby's Digest provides that on the passage of every law or ordinance, resolution or order, to enter into a contract by any council of any municipal corporation, the yeas and nays shall be called and recorded. This section has been held to be mandatory and its purpose has been stated to be to make the members of the council feel the responsibility of their action when important measures are before them, and to compel each member to bear his share in the responsibility by a record of his action which should not afterwards be open to dispute. *Cutler* v. *Town of Russellville,* 40 Ark. 105, and *Oglesby* v. *Fort Smith,* 105 Ark. 506.

The record in the present case fails to show that the yeas and nays were called and recorded upon the passage of the two ordinances on August 5, 1918, and both ordinances are, therefore, void.

It is also contended by counsel that the water and light rates could not be raised during the life of the franchise already granted to the company by the passage of an ordinance to that effect by the city council when accepted by the defendant company. In this conclusion we think the chancellor was wrong. As we have already seen the grant to the defendant company in the first instance, of the right to furnish water and electric lights to the city of Arkadelphia and its inhabitants when accepted became a contract between the municipality and the defendant company. In making the contract the mu-

nicipality was acting for the private benefit of itself and its inhabitants and its contracts of that character are governed by the same rules that govern contracts of private individuals. Therefore, like other contracts, a contract between a municipality and a public service company may be modified by mutual consent. McQuillin on Municipal Corporations, vol. 4, par. 1717 and 1723. This is the effect of our holding in *Little Rock Ry. & Elec. Co.* v. *Dowell,* 101 Ark. 223. In that case it was held that where a city, in granting a franchise to a street car company, stipulated for free transportation of the mail carriers, the latter have no such interest in the contract as will entitle them to enjoin the city from releasing the street car company from its obligations to carry them free.

The court further held that a city council in the exercise of its legislative power, as in granting or modifying a street railway franchise, is vested with a discretion which can be controlled by the courts only after abuse. The court said that when the exercise of the power and discretion of the council is attacked in the courts, a presumption must be indulged that the council has not abused its discretion, but has acted with reason and in good faith for the benefit of the public. The reason is that any other theory would be to substitute the judgment and discretion of the courts for the judgment of the members of the council with whom the Legislature has lodged this power. The same principle was announced in *Asher et al.* v. *Hutchinson Water, Light & Power Co.* (Kan), 61 L. R. A. 52. In that case the court held that a contract by ordinance between a city and a water company, that the latter will lay water mains and supply the inhabitants with water on certain streets of the city, may, after such mains are laid, be so modified and changed by the city and water company as to require the water company to remove its mains from certain streets, where, in the judgment of the council, public necessity no longer requires their continuance, to other portions of the city where public necessity requires that mains should be laid,

and that injunction will not lie at the suit of an individual to prohibit the city and water company from making such change, notwithstanding it may greatly decrease the value of his property. In discussing the question the court said: "In such cases there is no contractual relation between the city and the individual upon which the principle contended for by plaintiff can rest. It is true that by some of the conditions of the contract the individual is collaterally interested, but as to such the contractual relation is not between the city and the individual, but between the defendants and the individual. An individual can acquire no vested right as against the public in the continued service of a public utility. Such a doctrine, once admitted, would destroy the convenience as a public utility. It would then become hampered, and subject to the control of the individual, and made to subserve such interests, to the detriment of the public welfare. It follows that there was no error in refusing the injunction."

The ordinances which have for their purposes the raising of the water and light rates were introduced in the city council upon the application of the defendant company and their terms and conditions were fully accepted by the company after they had been passed by the council and on this account such ordinances, if they had been properly passed, would have become valid and binding upon the parties to them. The property owners had no vested right in the contracts between the city and the public service company and it is not claimed that an unconscionable, extortionate, or unreasonable rate was provided in the ordinances.

It follows from the views expressed in the opinion that the decree must be affirmed.