NATURAL GAS & FUEL CORPORATION *v.* NORPHLET GAS &
WATER COMPANY.

## Opinion delivered February 21, 1927.

1. GAS—FRANCHISE TO FURNISH GAS.—A franchise granted by a town council to a corporation to furnish gas for heat, light and power, when accepted, becomes a binding contract to be governed by the same rules and principles that control other contracts.

2. MUNICIPAL CORPORATIONS—VALIDITY OF ORDINANCE GRANTING FRANCHISE.—Where the ayes and noes were not called and recorded, as required by Crawford & Moses' Dig., § 7528, in passing an ordinance granting an exclusive franchise to furnish gas to the inhabitants of a town, the ordinance was invalid.

3. MUNICIPAL CORPORATIONS—ESTOPPEL TO DENY VALIDITY OF ORDINANCE.—By permitting a gas company to expend large sums of money in laying gas mains in streets, and in other respects to act upon the assumption that an ordinance granting it an exclusive franchise to furnish gas to the inhabitants of a town was valid, the town is estopped to deny the validity of the ordinance, though it was not passed as required by Crawford & Moses' Dig., § 7528.

4. MUNICIPAL CORPORATIONS—EFFECT OF ESTOPPEL.—Though a municipal corporation was estopped to deny the validity of an ordinance granting to a gas company an exclusive franchise to furnish gas to its inhabitants, a rival gas company which had acquired vested rights to supply a portion of the inhabitants of the town was not concluded by the estoppel of the town.

5. GAS—RIGHT TO CONTEST EXCLUSIVE FRANCHISE.—Where a gas company established its mains and secured contracts to supply the inhabitants of an unincorporated village, it acquired rights entitling it, upon the subsequent incorporation of the village, to contest the validity of a town ordinance granting an exclusive franchise to supply gas to a rival gas company.

Appeal from Union Chancery Court, First Division; *J. Y. Stevens*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Norphlet Gas & Water Company and the town of Norphlet brought this suit in equity against the Natural Gas & Fuel Corporation to enjoin it from furnishing natural gas to the inhabitants of the town of Norphlet and to require it to remove its pipe lines and gas mains from the streets and alleys of the town of Norphlet. The

suit was defended on the ground that Natural Gas & Fuel
Corporation had a contract with the inhabitants of the
town of Norphlet to lay its gas mains in the streets of the
town and to furnish gas to its inhabitants, and that the
purported franchise of the Norphlet Gas & Water Com-
pany was invalid.

On the part of the plaintiffs, it was shown that, on
June 1, 1925, the town of Norphlet granted to the Nor-
phlet Gas & Water Company an exclusive franchise for
the term of twenty-five years to lay its gas mains in the
streets and alleys of said town and to furnish the inhabit-
ants thereof with natural gas for heat, light and power.

On the part of the defendant it was shown that a
charter was granted to it by the State of Arkansas on
the 11th day of April, 1922. By the terms of its charter
it was given power to establish, construct and operate
pipe lines and other appurtenances for distributing and
marketing gas and other mineral products. It was also
given the power to distribute and deliver such gas through
its own pipe lines and other appurtenances suitable for
that purpose, and to purchase, lease or contract for all
such machinery or property as might be incident and
necessary to any of the objects granted. Pursuant to
the provisions of its charter, it obtained an easement
or right-of-way to lay its gas mains from the gas
fields to the village of Norphlet before it was incor-
porated as a town. It obtained an easement from the
owners of the real property in the village to lay its mains
along the public highways and streets of the village. In
the beginning, it had about one hundred customers. When
gas and oil were discovered in that territory, the village
of Norphlet greatly increased in population, and the
defendant extended its gas mains to furnish natural gas
to the inhabitants thereof. At the time the town was
incorporated it had 2.500 inhabitants, and the defendant
had from 275 to 300 domestic consumers of natural gas.
It had about 25 industrial consumers, and also furnished
gas to blacksmiths and machinery shops in said town.
At this time it had expended about $20,000 in laying its

gas mains and in preparing to furnish the inhabitants of the town of Norphlet with natural gas. After the town of Norphlet granted to the Norphlet Gas & Water Company its franchise, that company expended something over $50,000 laying its gas mains and in preparing to serve the inhabitants of the town of Norphlet with natural gas.

The chancellor found the issues in favor of the plaintiffs, and the defendant was enjoined from furnishing natural gas for any purpose to people living within the corporate limits of the town of Norphlet; and it was ordered to remove its pipe lines and equipment for furnishing natural gas from the streets and alleys of said town. The case is here on appeal.

*Pace & Davis, Jeff Davis* and *R. E. Wiley*, for appellant.

*G. E. Garner*, for appellee.

HART, C. J., (after stating the facts). A franchise granted by a city council to a public service corporation to furnish gas for heat, light and power, when accepted, becomes a binding contract, to be governed by the same rules and principles that control other contracts. *Mena* v. *Tomlinson Bros.*, 118 Ark. 116, 175 S. W. 1187; *Arkansas Light & Power Co.* v. *Cooley*, 138 Ark. 390, 211 S. W. 664; *Pocahontas* v. *Central Power & Light Co.*, 152 Ark. 276, 244 S. W. 712; and *El Dorado* v. *Citizens' Light & Power Co.*, 158 Ark. 550, 250 S. W. 882.

The record in the case at bar, however, fails to show that the ayes and nays were called and recorded as required by § 7528 of Crawford & Moses' Digest upon the passage of the ordinance granting an exclusive franchise to the Norphlet Gas & Water Company to furnish natural gas to the inhabitants of the town of Norphlet for the period of twenty-five years. The section of the digest just referred to has been held mandatory, and a failure to comply with it makes the ordinance void. *Cutler* v. *Russellville*, 40 Ark. 105, and *Arkansas Light & Power Co.* v. *Cooley*, 138 Ark. 390, 211 S. W. 664.

But it is insisted by counsel for the plaintiffs that the town of Norphlet is estopped from questioning the validity of the ordinance because it has stood by and allowed the Norphlet Gas & Water Company to expend great sums of money in laying its gas mains in the streets and alleys of the town and in purchasing equipment for the purpose of carrying out its contract. The record shows that it has expended over $50,000 in making preparations for carrying out its contract, and that it is fully equipped to do so. In this connection it may be said there is a marked distinction between the doctrine of estoppel as applied to *ultra vires* and *intra vires* contracts of municipal corporations, which are recognized both by the text-writers and the adjudicated cases on the subject.

On this question Judge McQuillin says:

"A municipality cannot be estopped to question the use of its streets without a franchise, or the validity of a franchise where it has no power to grant such a franchise. * * * On the other hand, if a municipality has the power to grant a franchise and a public service company uses the streets with the knowledge of the municipality, the latter may be estopped to question the right to use the streets without a franchise, or the validity of the franchise granted, where it does not violate statutory or charter requirements. For instance, a municipality which has acquiesced for years in the use of its streets by a public service company, which has spent thousands of dollars in connection with such use, and which has received the benefits of such use of the streets and has regulated the use and levied licenses and granted permission as to certain uses, cannot contest the right of the company to use the streets. Likewise, acquiescence by a municipality in the use of streets by a railroad company, pursuant to a grant of such right by the Legislature, precludes the municipality from objecting thereto." 4 McQuillin, Mun. Corp., § 1687.

Judge Dillon says:

"And if the municipality has the power to grant such right or franchise, and a' corporation, believing and assuming that it has the consent or grant of the municipality, has, with the knowledge of the proper municipal authorities, proceeded to exercise the right of franchise, and has constructed, maintained and operated its works and appliances in the city streets, the municipality will, in a proper case, be estopped by the acts and conduct of its officers and representatives, in knowingly permitting and acquiescing in the use and occupation of the streets, from asserting the invalidity of the grant of the franchise, so far, at least, as concerns its own failure to pass an ordinance or take steps necessary to effectuate the grant." 3 Dillon, Mun. Corp., 5th ed., 1242.

In *City Railway Co.* v. *Citizens' Street Railroad Co.*, 166 U. S. 557, 17 S. Ct. Rep. 653, in discussing the subject, the court said: "All that is necessary to create an estoppel *in pais* is to show that, upon the faith of a certain action on the part of the city, which it had power to take, the company incurred a new liability; as, for example, by the negotiation of a new loan, and the issue of a new bond and mortgage to secure the same."

In *City of Louisville* v. *Cumberland Tel. & Tel. Co.*, 224 U. S. 649, 32 S. Ct. Rep. 572, it was held (quoting from the syllabus):

"Permitting the transferee of a franchise to act thereunder and expend large sums of money and exacting from it a bond to comply with the conditions of the franchise will operate to estop a municipality from denying that the franchise was transferable and the transferee had succeeded to all the rights of the transferring corporation."

In *Moore* v. *New York*, 73 N. Y. 238, 29 Am. Rep. 134, the rule was tersely stated as follows:

"The unauthorized acts of city authorities—that is, those *ultra vires,* in the sense that they are not within the general powers conferred, are not binding on

the corporation, and corporations are not estopped by acts of corporate agents strictly *ultra vires.* A city may set up as a defense its own want of power under its charter to contract, but, in favor of *bona fide* holders of its negotiable securities, and, by parity of reasoning, those innocently dealing with it, and in good faith parting with property and expending money for its benefit, it may be estopped to avail itself of irregularities in the exercise of the power conferred."

These and many other authorities to the same effect may be found in a case-note to 7 A. L. R. 1248 *et seq.*

This distinction has been recognized and applied by this court. In *Newport* v. *Railway Company,* 58 Ark. 270, 24 S. W. 427, the town of Newport was sued to recover an amount alleged to be due on a contract to construct a levee. The court held that, inasmuch as the contract sued on was not within the scope of the corporate powers of the town, it could not be ratified, and the town was not estopped by having accepted and received the benefit of the work done under it. On the other hand, in *Town of Searcy* v. *Yarnell,* 47 Ark. 269, 1 S. W. 319, it was held that a municipal corporation has the power to dispose of property held for general convenience, pleasure, or profit. It was further held that a contract of sale by a municipal corporation which is fair and lawful, and fully performed by both parties, cannot afterwards be avoided by the corporation on the ground of *ultra vires.* The principle was again applied in the case of *Town of Augusta* v. *Smith,* 117 Ark. 93, 174 S. W. 543.

Again, it is insisted by counsel for the defendant that, even if the town of Norphlet should be held to be estopped from questioning the validity of the ordinance to the Norphlet Gas & Water Company, this estoppel would not apply to the Natural Gas & Fuel Corporation. As will appear from our statement of facts, this corporation received a charter from the State of Arkansas authorizing it to construct and operate pipe lines and gas mains for the purpose of furnishing natural gas to consumers. Pursuant to the authority thus granted,

the company extended its gas mains and pipe lines to the village of Norphlet, under grants of some kind from the property owners allowing it to do so.  It also acquired the right to lay its pipes and gas mains in the village of Norphlet and made arrangements to furnish about one hundred people who lived there with natural gas.  When oil and gas were discovered, the population of the village began to increase rapidly, and the defendant extended its gas mains in proportion so that it might furnish gas to the inhabitants.  At the time the town of Norphlet was incorporated the defendant had its pipe lines and gas mains all over the town, as they now exist, and was furnishing gas to between 275 and 300 domestic consumers and to about twenty-five industrial consumers. The record shows that there was no particular length of time to these contracts.  They simply seemed to be during the will of the contracting parties.  It is insisted that, under these circumstances, the right of the defendant was merely a license, and constituted no property right in it whatever.

In *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, it was held that municipal corporations constitute a part of the civil governments of the State and their streets and highways, which is the province of government to render safe.  In carrying out this duty the distribution of gas by means of pipe lines in the streets or highways of a city is a franchise to be granted for the accomplishment of a public purpose.

Again, in *City of Louisville* v. *Cumberland Tel. & Tel. Co.*, 224 U. S. 649, it was held that the right to use the streets in a city for the purpose of a public utility "has been called by various names—an incorporeal hereditament, an interest in land, an easement, a right-of-way— but, howsoever designated, it is property."

This principle has been recognized and applied by this court in *Clear Creek Oil & Gas Co.* v. *Fort Smith Spelter Co.*, 148 Ark. 260.  In that case it was held that a corporation, organized under our statute for the purpose of developing and marketing natural gas, had a

right to maintain its lines of pipes for that purpose along
the public highways and the streets of cities or towns,
with the consent of the authorities thereof, and that such
corporation might become a public utility corporation
if it wished to do so, but that, in any event, by complying
with the statute as to its organization, it would acquire
the right to extend its pipe lines and furnish gas to
private consumers.

The defendant extended its pipe lines to the village
of Norphlet and obtained the right-of-way to lay its pipe
lines along the streets of the public highways of the vil-
lage.   It then made contracts with the inhabitants of the
village to furnish them with gas.   These acts gave it a
property right, which it had a right to protect from
invasion in the courts.   The defendant had the right to
supply gas to the inhabitants of the village through pipes
and mains laid in the streets and public highways as then
constructed, upon performing the condition of its con-
tract for service with the inhabitants of said village.
This gave it a property right, and not a mere license.
In this view of the matter, no estoppel on the part of
the town of Norphlet could affect its right.   It did not
in any manner acquiesce in the Norphlet Gas & Water
Company's constructing its lines in the town of Norphlet,
and it did nothing whatever to estop itself from con-
testing the validity of the ordinance attempted to be
granted to the water company.   If the right it possessed
at that time to furnish gas to the inhabitants of the town
was a property right, it could not be taken away by
estoppel on the part of the town.   The town could not
have taken away its rights, even by passing an ordinance
prohibiting it from furnishing gas to the inhabitants of
the town.   The town could only have taken away its
right by granting an exclusive right to another company
to furnish gas to the inhabitants of the town.   As we
have already seen, this was not done, and no estoppel on
the part of the city should operate to take away any
vested property right of the defendant.   The same equi-
table principles which would estop the city from question-

ing the invalidity of the ordinance granted to the Nor-
phlet Gas & Water Company would also estop it from
questioning the validity of the contract rights of the
defendant. The rights of the defendant could not be taken
away by a species of estoppel on the part of the city in
a matter in which the city could not legally act for it.

Justices WOOD, SMITH and KIRBY agree with the
view herein expressed as to the estoppel on the part of
the town of Norphlet, but they dissent from the view
which holds that the town of Norphlet cannot act as the
representative of the defendant and thereby estop it.
They believe that the city acts as agent and trustee for
its inhabitants in the premises; and that the estoppel on
its part also operated to estop its inhabitants and the
defendant. In other words, they are of the opinion that,
the town being estopped to deny the validity of the fran-
chise, the estoppel is as effective against the city and
all others as though the franchise were valid and legally
granted. On the other hand, Justices HUMPHREYS,
MEHAFFY and McHANEY think the doctrine of estoppel
has no application in the case. They believe that the
doctrine of estoppel allows the city to do indirectly what
it is forbidden to do directly, and in practical effect to
evade a plain mandatory provision of the statute.

The result of their divergent views is that the view
expressed by myself must control in the disposition of the
case. According to my views, the municipality is
estopped on its own account, and could not grant an
exclusive franchise to any other company to furnish gas
to the inhabitants of the town of Norphlet during the
life of the franchise, nor could it escape any of the lia-
bilities imposed upon it in the way of making payments
for city gas if such is provided in the contract. It does
not seem to me, however, that an estoppel on the part
of the city could operate to deprive the defendant of any
of its property rights. The city could represent it only
in a governmental capacity, but could not deprive it of
any of its property rights under any species of estoppel
as in the present case. The only way, it seems to me,

that the town of Norphlet could take away the right of the defendant to furnish the inhabitants of the town of Norphlet with natural gas would be to pass a valid franchise to some other company giving it the exclusive right to furnish the inhabitants with natural gas. This would take away the right of the defendant, because it has no exclusive right and has no franchise right for any particular length of time.

In this connection it may be said that the defendant would have no right to extend its mains further, and can only furnish gas to the inhabitants of the city who are so situated that they may be served from the gas pipes and mains as now constructed.

It follows that the decree must be reversed, and the case will be remanded to the chancery court with directions to enter a decree in accordance with this opinion, and for further proceedings according to the principles of equity and not inconsistent with this opinion.

SMITH, J., (dissenting). It was held in the case of *Newport* v. *Railway Co.*, 58 Ark. 270, 24 S. W. 427, that a town could not, by ratification, make a contract binding which was *ultra vires*. But the granting of a franchise is not *ultra vires*. On the contrary, express authority to grant certain franchises is conferred. By § 7492, C. & M. Digest, it is provided that "for the purpose of providing water, gas, electric light, heat, cold storage, or street railroad, the mayor and council may contract with any person or company to construct and operate such utilities, and may grant to such person or company, for a time which may be agreed upon, the exclusive privilege of using the streets and alleys of such city for such purposes.  *    *    *"

While a contract for a franchise can be made only by the passage of a resolution or ordinance, adopted by a majority of the council, upon the passage of which the yeas and nays were called and recorded, and a franchise not so granted is voidable in its executory stage, it does not follow that, because the contract is voidable in its executory stage, it can never have vitality or binding effect.

There are many cases which distinguish between a con\`act which is *ultra vires* in the general and primary sen\`- that it is wholly outside of the power of the corpora   n to make under any circumstances, and which is therei. *r*e void *in toto,* and one which is *ultra vires* in the restricted sense that the power to contract was irregularly exercised and which may or may not be validated.

In the chapter on Municipal Corporations in 19 R. C. L., § 428, page 1155, it is said: "And when a municipal corporation, having power to grant a particular franchise, undertakes to grant it, and the grantee, believing that it has a valid franchise, proceeds to erect its structures in the street and to exercise such franchise, with the knowledge and without the objection of the municipality, the latter will be estopped from asserting the invalidity of the franchise on account of defects in the execution of the power.   Conversely, a public service company, which takes and retains all the advantages and benefits of an ordinance under which it is permitted to operate its works in the streets, cannot escape the performance of duties to the public imposed upon it by the ordinance, on the ground that the ordinance and the duties imposed by it are *ultra vires* both the municipality and the company."   The annotated case of *Hagerstown v. Hagerstown R. Co.,* 123 Md. 183, Ann. Cas. 1916B, 1267, together with the cases cited in the annotater's note, sustain the text quoted.

That a city may estop itself from denying its liability under a contract improperly made, but of which it has accepted the benefits, is decided in the cases of *Forrest City* v. *Orgill,* 87 Ark. 389, 112 S. W. 891; *Texarkana* v. *Friedell,* 82 Ark. 531, 102 S. W. 374; *Oglesby* v. *Ft. Smith,* 105 Ark. 506, 152 S. W. 145; *Augusta* v. *Smith,* 117 Ark. 93, 174 S. W. 543: *Venable* v. *Plumerville,* 130 Ark. 477, 198 S. W. 196.   See also *Dell Special School District* v. *Johnson,* 129 Ark. 211, 195 S. W. 393; *International Harvester Co.* v. *Searcy County,* 136 Ark. 209, 206 S. W. 312.

Other authorities cited in the opinion of the Chief
Justice sustain the view that a town may, by ratification,
make valid a franchise granted by an ordinance improp-
erly passed. There appears to be no question that, if
such a contract can be ratified, the one here involved has
been. It has been fully acted upon after its acceptance.

It is also settled law that, when a franchise is granted
and accepted, it becomes a contract to be construed like
other contracts. *Arkansas Light & Power Co.* v. *Cooley*,
138 Ark. 390, 211 S. W. 664; *Lackey* v. *Fayetteville Water
Co.*, 80 Ark. 108, 96 S. W. 622; *Little Rock Ry. & Elec.
Co.* v. *Dowell*, 101 Ark. 223, 142 S. W. 165; *Hot Springs
Electric Light Co.* v. *Hot Springs*, 70 Ark. 300, 67 S.
W. 761.

Appellee therefore has a valid franchise, purporting
to give it the exclusive right to furnish gas to the inhab-
itants of the town of Norphlet. The question here to be
decided would appear, therefore, to be whether it shall
enjoy the benefits which such a grant ordinarily confers.

The majority hold that the franchise rights of appel-
lee are qualified by the prior vested rights of the
appellant company. To that extent, at least, under
the view of the majority, the exclusive franchise is not
an exclusive franchise.

As the majority say, appellant did obtain a charter
from the State, but that fact is unimportant here. Noth-
ing in the charter gave it any right to use the streets of
the town of Norphlet. The charter merely gave it the
right to construct and operate pipe lines in this State and
to distribute gas when it thereafter acquired the right
to do so. And what rights has it acquired so far as the
town of Norphlet is concerned?

The only right alleged or claimed is such as was
acquired by private contracts with persons residing in
territory which later became a part of the town. Con-
tracts were made by appellant with individuals to supply
gas. There was no other grant of any kind, and there
is no pretense that the town of Norphlet granted any
right to the use of the streets to appellant, for the town

was nonexistent when appellant laid its pipes. No attempt was made to grant appellant the right to use the public streets by any one. Indeed, this use is not the subject of private contract. Appellant had only private contracts, made with each consumer of its gas, and it acquired, therefore, at most, a mere license to use these streets, subject to be terminated when the town came into existence and took control of its streets. If this is not true, the town can never control its streets until the private contracts between appellant and its customers have expired. If appellant is entitled, from contractual rights with individual consumers, to the use of the streets of the town in its operations, in opposition to the exclusive franchise granted appellee by the city, the validity of which it is estopped to deny, there is no reason why it may not continue such use so long as its customers wish to buy gas from it, regardless of the franchise granted or any that may hereafter be granted.

Appellee has an exclusive franchise, the validity of which the town is estopped to deny, by its terms limited to a period of twenty-five years, whereas appellant is given, under the majority opinion, the right to the use of the streets, in opposition to appellee's right to the use thereof, which may continue indefinitely.

Appellant has not been deprived of any vested rights, for it had none. It had merely private contracts, which did not and could not create an easement in the streets operating to deprive the town, which was later organized, of the control thereof.

The right of cities and towns to see that all the inhabitants have such necessities as light and gas and water is conferred by the statute quoted and this power may be exercised when it thought advantageous to do so by the grant of a franchise conferring the exclusive right on the grantee to supply these necessities, upon such conditions as may be agreed upon.

Appellant must be charged with knowledge of the power thus conferred by statute, and its private con-

tracts were made subject to the possible exercise of this power.

Appellant has no other or greater rights than it acquired by its private contracts to furnish gas, and these contracting consumers could confer no greater right than they themselves possessed. As residents of the town, they, like all others, were subject to the right of the town to grant a franchise. It is the town, acting through its council, which grants franchises, and not the citizens thereof, where a franchise may be granted· at all, and all persons are affected alike when this power is exercised.

This power has been exercised, and, in the exercise thereof, appellee acquired a franchise, and its rights thereunder should be protected.

I submit, with all deference, that nothing was decided in the case of *Clear Creek Oil & Gas Co.* v. *Fort Smith Spelter Co.*, cited by the majority, which gives any support to the conclusion here reached. In that case appellant, the prevailing party, "obtained franchises from the cities of Van Buren and Fort Smith * * * to distribute and sell gas to the inhabitants of those cities." It was there said that "The real point of the controversy between the parties is whether the contracts between appellant and appellees for the sale and purchase of gas were executed by appellant when it was not acting in any public capacity, as contended by appellees, or whether appellant was from the start a public service corporation and the contracts attempted to confer preferential rights on appellees as consumers."

On account of the conflicting views of the members of the court, the opinion of the Chief Justice becomes the law of the case, and he says: "The only way, it seems to me, that the town of Norphlet could take away the right of the defendant (appellant) to furnish the inhabitants of the town of Norphlet with natural gas, would be to pass a valid franchise to some other company, giving it the exclusive right to furnish the inhabitants with natural gas. This would take away the right

of the defendant, because it has no exclusive right and has no franchise right for any particular length of time." This is exactly what has been done. The franchise granted appellee has become valid by estoppel, and it is therefore as much a franchise as if it had been granted by a valid ordinance, and appellee (plaintiff) having acquired an exclusive franchise, its rights thereunder should be enforced.

Neither appellee nor the city has undertaken to appropriate any property belonging to appellant. The restraining order, from which this appeal is prosecuted, granted appellant time to remove its property, and no complaint is made that the time allowed was not sufficient for that purpose. The only right denied appellant is that of infringing upon a valid franchise, and the decree of the court below should therefore, in my opinion, be affirmed.

Mr. Justices WOOD and KIRBY concur in the views here expressed.