# VICTOR W. BRUDER v. BOARD OF EDUCATION OF CITY OF MINNEAPOLIS AND OTHERS.[1]

March 22, 1929.

No. 27,146.

*H. V. Mercer & Company,* for appellant.

*Neil M. Cronin,* City Attorney, and *Thomas B. Kilbride,* Assistant City Attorney, for respondent board of education.

HILTON, J.

Plaintiff appealed from a judgment.

Action for specific performance of a claimed contract for the conveyance of certain real estate and for damages in case specific performance cannot be granted. The judgment decreed that no valid contract was entered into between plaintiff and the board of education of the city of Minneapolis (hereinafter called the board) and that plaintiff was not entitled to a conveyance, damages or to any other relief.

[1]Reported in 224 N. W. 268.

The board, consisting of seven members, is a municipal corporation created by c. XVIII of the charter of Minneapolis. It is empowered by § 1 of that chapter to hold real estate and to use, sell and convey the same. By § 4 the powers and duties of the officers are in part as follows:

"The secretary * * * shall draw no orders on the treasury except such as have been allowed by the Board by a majority vote of all its members taken by ayes and nays, and entered on the record of the proceedings of the Board."

Section 8 is as follows:

"The Board may purchase real estate for school purposes whenever six School Directors shall vote to make such purchase; and the Board may also sell and convey any of its real estate, but only when five of the School Directors authorized to be elected shall vote to make such sale. In case of sale of real estate of the Board, the deed of conveyance thereof may be executed by the President and Secretary, officially, having the seal of the Board affixed thereto. All votes under this section shall be by ayes and nays, and recorded in the record of the proceedings of the Board."

The board owned lots 1 to 8, inclusive, block 18, Palmer's Addition to Minneapolis, which will hereinafter be referred to as "the property." It was not used by the board for school buildings or grounds but for storage purposes. On September 29, 1925, plaintiff submitted to the board at a regular meeting an offer to purchase the property for $4,500 on certain conditions and accompanied the offer with a draft payable to his order and indorsed to the board for $100. At the meeting on that day, a motion was made by director Purdy authorizing the business superintendent of the board to inform plaintiff that the board would accept his offer (with certain changes). The record of this action as it appears in the minutes is as follows:

"Motion—Director Purdy moved that the business superintendent be authorized to inform Mr. Bruder that the Board will accept his offer of $4,500, with interest at 6%, payable in the amounts stated,

with the privilege of making complete payment at any time; but that the deed to the property will not be released until full payment of the entire tract is made; and further, that in case Mr. Bruder fails to make payment of the instalments, the property will revert to the Board. Director Meyers seconded the motion. Motion carried."

The circumstance that the minutes of this meeting were approved at a subsequent meeting is of no moment; there was no aye and nay vote on that approval. Havre De Grace v. Bauer, 152 Md. 521, 137 A. 344; 20 Cyc. 354. Pursuant to that motion, on October 3 the business superintendent sent a letter to plaintiff in which was recited the action taken, including the last quotation. On October 8, plaintiff having indicated to the business superintendent his willingness to accept the modification of the offer, the business superintendent delivered to him a communication in which he inclosed two copies of a contract for deed covering the property, and requesting the execution and return thereof to the office of the board. On October 13 and before the meeting of the board, plaintiff executed the proposed contract in duplicate and delivered the same to the business superintendent for execution by the board.

At the meeting of the board on that day, the business superintendent reported that plaintiff had accepted the offer. Director Purdy moved that the board sell the property to plaintiff for $4,500, payable upon the terms theretofore specified. This motion was voted upon and lost by an aye and nay vote of 4 to 3. On October 15 plaintiff delivered to the business superintendent a further draft for $400 to apply on the purchase price, said draft being made payable to the order of plaintiff and indorsed to the order of the board. A receipt was given by the business superintendent to plaintiff reciting that plaintiff had paid $500 as earnest money on the contract. On November 25 the two drafts were returned to plaintiff by the business superintendent advising that the board refused to accept plaintiff's offer and had sold the property for $10,000. These drafts were returned by plaintiff to the board on November 27. Further drafts covering the proposed terms of payment were afterwards

given to the board but all finally returned, not prejudicing whatever rights plaintiff might have.

At a meeting of the board on November 24, 1925, a motion was made by director Meyers that the board sell to M. X. Jackley, agent for Benzo Gas Motor Fuel Company (defendants), the property for $10,000—$2,500 cash, $2,500 on November 5, 1926, $5,000 on December 1, 1927. Director Gould seconded the motion. The minutes then disclose the following:

"Motion carried as follows: Yeas: Directors Decker, Gould, Jepson, Meyers, Purdy, Madam Secretary and Mr. President—7. Nays: None—0."

On the following day a contract for a deed was entered into between the Benzo Gas Motor Fuel Company and the board.

On December 11, 1925, plaintiff began this action and on the next day filed a lis pendens in the office of the register of deeds. The court's 13th finding of fact is as follows:

"Six of the seven directors comprising said Board were in attendance throughout said meeting of September 29, 1925. The roll of said Board was not called upon the motion set forth in the fifth paragraph of these findings [September 29 motion]. On said last named date it was the fixed and uniform custom of said Board to record in its minutes the names of directors voting in the negative on any motion, whether upon a call of the roll or otherwise. The minutes of said meeting of September 29, 1925, do not contain a record that any director voted against the motion set forth as above recited, and the court therefore finds that none of the votes actually cast thereon were in the negative. But the evidence fails to show how many or what directors actually voted in the affirmative on said motion; or that five directors actually so voted."

In its memorandum the court characterizes this finding as being "certainly as favorable to plaintiff as is warranted by any possible interpretation of the evidence."

The foregoing recital of facts, including the 13th finding, constitutes substantially the findings of fact; they have ample support in

the evidence. The errors assigned ultimately go to the contention that the judgment should have been ordered for plaintiff instead of for defendants.

The court, as conclusions of law, held (1) that the board never entered into any valid contract for the purchase and sale of the property; (2) that plaintiff is not entitled to require of defendants or either of them a conveyance to him of said property, or damages in the event that the same cannot be so conveyed, or to any relief; (3) that defendants are entitled to judgment for a dismissal of the action and for costs. The only question is "was there a contract?" If there was not, the judgment should be affirmed.

It is not necessary for us to consider whether the transaction was such as would constitute a binding contract if the vendor had been an individual or a private corporation. It is seriously contended by defendants that irrespective of the charter requirements there was no contract. The converse is urged by plaintiff. By reference to the charter provisions referred to it will be noted (1) that the board can purchase real estate (a) for school purposes only and (b) only on the affirmative vote of six directors; (2) that the board can sell real estate only on the affirmative vote of five directors. We think that these provisions are integral, constituent parts (essential to completeness) of the grant of power and that no valid purchase of real estate can be made by the board unless there are six votes in favor thereof and that no valid sale thereof can be made by less than five affirmative votes.

Under the practice adopted by the board, as appears by the evidence and as found by the court, a motion voted upon, where there was no roll call, might have been recorded as carried if only one member voted in the affirmative, provided that no one voted in the negative. There is here an entire failure of a showing that there were five affirmative votes in favor of selling the property to plaintiff. For this reason plaintiff must fail.

We further are of the opinion that the requirement that there shall be a vote by ayes and nays (a roll call) and a recording thereof is mandatory. It was not merely the prescribing of a method of

voting or a method of recording the vote; nor was it simply a clerical matter the irregularity of which would not invalidate the action of the board.

We have carefully examined the cases cited by counsel for plaintiff and given due consideration thereto. The situation in each is readily distinguishable from that in this case. Our conclusions find abundant and ample support in the following authorities: State ex rel. v. Milwaukee E. R. & L. Co. 144 Wis. 386, 129 N. W. 623, 140 A. S. R. 1025; Sutton v. Mentzer, 154 Iowa, 1, 134 N. W. 108; Steckert v. City of East Saginaw, 22 Mich. 103; O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Preston v. City of Cedar Rapids, 95 Iowa, 71, 63 N. W. 577; Town of Olin v. Meyers, 55 Iowa, 209, 7 N. W. 509; City of Rome v. Reese, 19 Ga. App. 559, 91 S. E. 880; Town of De Ridder v. Head, 139 La. 840, 72 So. 374; Arkansas L. & P. Co. v. Cooley, 138 Ark. 390, 211 S. W. 664; Natural G. & F. Corp. v. Norphlet G. & W. Co. 173 Ark. 174, 294 S. W. 52; Louisiana Western R. Co. v. Village of Duson, 146 La. 190, 83 So. 455; Monett E. L. P. & I. Co. v. City of Monett (C. C.) 186 F. 360; Board of Education v. Best, 52 Ohio St. 138, 39 N. E. 694, 27 L. R. A. 77; McQuillin, Mun. Corp. (2 ed.) §§ 638, 639, 650, (1 ed.) §§ 608, 609, 620; 2 Dillon, Mun. Corp. (5 ed.) § 540; 43 C. J. 248; 19 R. C. L. 889; 28 Cyc. 334.

We are in accord with the suggestion of the trial court that the purpose sought to be effected by this provision was definitely and unequivocally to fix responsibility upon individual directors for their action not only in spending public money as provided for in c. XVIII, § 8, of the charter, but also as regards the disposing of real estate. The mandatory charter provisions were not complied with, and there was no valid contract.

Judgment affirmed.