ARK. STATE HIGHWAY COMM. v. ARK. POWER & LIGHT CO.

5-1939                                330 S. W. 2d 77

Opinion delivered November 30, 1959.

[Rehearing denied January 11, 1960]

*W. R. Thrasher, Dowell Anders, W. B. Brady,* for appellant.

*House, Holmes, Butler & Jewell,* for appellee.

SAM ROBINSON, Associate Justice. The appellant, Arkansas State Highway Commission, hereinafter called the Commission, ordered the Arkansas Power & Light Company, hereinafter called the Power Company, to remove its poles and wires from certain property which the Commission intends to use as the right of way for the new El Dorado by-pass, a controlled access highway. The Power Company questioned the authority of the Commission to summarily order such removal, and this suit for a declaratory judgment was filed by the Commission. From a judgment in favor of the Power Company the Commission has appealed. The sole issue here is whether the Commission has authority by virtue of the police power of the State to take from the Power Company, without compensation for damages sustained, its property rights, if any, in the use of the right of way of the streets and roads to maintain its poles and wires.

The Power Company concedes that the Commission has the right to cause the utility facilities to be removed, but contends that such action in the existing circumstances must be by eminent domain proceedings and that the Power Company is entitled to compensation for damages sustained. The facilities in question, consisting principally of poles and wires, are located on property that may be divided into three categories: (1) Facilities of the Power Company located on the public streets of El Dorado; (2) facilities located on property which has been dedicated as public streets in additions outside the city limits; and (3) facilities located on county roads.

Conceding, without deciding, that the Commission would have authority to exercise the police power in some circumstances, we do not believe that the situation in the case at bar calls for the exercise of such power. The issues were submitted on a stipulation of facts, wherein it is agreed that the Power Company had the lawful right to locate, operate and maintain its existing poles in the city of El Dorado and urban areas thereof on street rights of way, as authorized by the franchise from the city of El Dorado, and also that the Power Company had acquired an easement on the right of way of the county roads, either by purchase from the adjoining property owners or by prescription insofar as such owners are concerned.

But even though the Power Company has the right to maintain its poles on the rights of way, it does not mean that the company could not be compelled to move its facilities so as not to unnecessarily interfere with use of the streets. The franchise specifically provides: That "the grantee [Power Company] shall, in the construction and operation of said electric light and power plant or plants, locate all poles on the curb lines of streets, alleys, avenues, sidewalks and public grounds of said City, and furnish sufficient power to operate all street lights and all commercial electrical lights and power continually", and, further, that "The grantee [Power Company] is hereby granted the right-of-way in, through.

under and over all streets, avenues, alleys, side-walks, and public grounds of said City for the purpose of erecting, constructing, operating and maintaining its electric light and power plant or plants; the right to trim all trees in said streets, alleys, sidewalks and public places and grounds that may come in contact with its wires, and of erecting and maintaining poles, wires, fixtures and all other attachments and equipments necessary for the carrying of electricity in and through the city, provided the streets, alleys, avenues and sidewalks shall not be unnecessarily and unreasonably impaired or obstructed thereby.'' Hence, if the city or county should change the right of way of a public street or road, or widen it, or relocate it, the Company could be required to change its poles and wires without compensation so as not to ''unnecessarily and unreasonably impair or obstruct'' the street. But here it is not a question of requiring the Power Company to relocate its poles so as not to unnecessarily or unreasonably impair or obstruct the traffic. The Commission has demanded that the Company remove its facilities entirely from the right of way.

The franchise gave to the Power Company certain property rights. The ordinance granting the franchise provides that it constitutes a contract between the city and the Power Company, and the Power Company is obligated to furnish to certain public buildings in El Dorado electricity free of charge, and for 25 years after the granting of the franchise the Power Company must supply electricity to the citizens of the city at the price named in the contract.

It was further agreed ''between the city and the grantee that this franchise and contract is granted by the city upon the conditions that the grantee shall carry out the requirements herein imposed and shall complete the installation of all street lights within six (6) months from date of notice . . .''.

There is no question but that under the franchise the Company owns a property right. In 18 Am. Jur. 790, it is said: ''Contract rights and franchises—When

contract rights are taken for the public use, there is a constitutional right to compensation in the same manner as when other property rights are taken. A franchise which constitutes a binding contract is property in the constitutional sense. The fact that the franchise relates to the public use does not entitle the state to abrogate it without compensation, for a franchise is the private property of even a public service corporation.''

''A right of way upon a public street, whether granted by act of the Legislature or ordinance of a city council, is an easement, and as such is a property right and entitled to all the constitutional protection afforded other property and contracts.'' *Southern Bell T. & T. Co.* v. *City of Mobile,* 162 F. 523, 528, 174 F. 1020.

The Court said in *Natural Gas & Fuel Co.* v. *Norphlet Gas & Water Co.,* 173 Ark. 174, 294 S. W. 52: ''Again in *City of Louisville* v. *Cumberland Tel. & Tel. Co.,* 224 U. S. 649, it was held that the right to use the streets in a city for the purpose of a public utility 'has been called by various names—incorporeal hereditament, an interest in land, an easement, a right-of-way—but, howsoever designated, it is property'. This principle has been recognized and applied by this court in *Clear Creek Oil & Gas Co.* v. *Ft. Smith Spelter Co.,* 148 Ark. 260.''

The police power should not be indiscriminately or unnecessarily used. In *Beaty* v. *Humphrey,* 195 Ark. 1008, 115 S. W. 2d 559, this Court said: ''The police power of the State is one founded in public necessity, and this necessity must exist in order to justify its exercise.'' To the same effect is *City of Little Rock* v. *Smith,* 204 Ark. 692, 163 S. W. 2d 705.

Here it does not appear that it is necessary for the Commission to exercise the police power to take from the Power Company whatever rights it has in maintaining its poles and wires on property the Commission desires to use in constructing the by-pass. The controlled access road is being constructed on authority of

Act 383 of 1953 (Ark. Stat. § 76-2202—76-2207, incl.). Appellant says in its brief that these sections of the statute "specifically authorize the course of action taken by the Highway Commission in this instance." We do not find that the statutes cited authorize the course of action employed by the Commission in attempting to take from the Power Company by the exercise of police power whatever rights it has in the use of the streets to maintain its facilities. In fact, just the contrary appears. Section 76-2205 provides that the highway authorities "may acquire private or public property and property rights for controlled access facilities and service roads, including rights of access, air, view and light, by gift, devise, purchase or condemnation. . . ." Thus it will be seen that the statute gives to the highway authorities the power to acquire private or public property and property rights by gift, devise, purchase or condemnation, but the statute does not authorize the taking of property rights by the exercise of police power, and it appears from the following section, § 76-2206, that court proceedings are contemplated in the taking of property or property rights.

Appellant argues that the Power Company has no rights in the use of the streets and roads to maintain its poles and wires that entitle the Company to compensation in the event it is deprived by the State of such rights. But in the same breath appellant says: "Paragraph 10 of the stipulation of facts covers defendant's facilities located on county road right of way. Since the use of such right of way constitutes an additional servitude on the fee where the road right of way is an easement and not a fee, the utility must compensate the fee holder or is liable for damages, if only nominal. *Cathey* v. *Ark. Power & Light Co.*, 193 Ark. 92, 97 S. W. 2d 624. . . . To protect itself in this situation, for county roads are established by easement, defendant Power & Light Company has secured right of way easements or permits (presumably by purchase) or had its poles placed in the right of way so long that by prescription the fee holders' claim of damage would be

barred. . . . Paragraph 11 of the stipulation of facts concerns facilities located within the right of way of platted streets in rural areas. Again, as in the case of facilities on county road right of way, the location of poles is an additional servitude upon the subservient fee.'' Accordingly it appears that insofar as the streets in the platted additions outside the city and the county roads are concerned, the Power Company obtained nothing from the city, county or state. According to the provisions of Ark. Stat. § 35-301, the city, county or state could not prevent the Power Company from using the streets and roads provided satisfactory arrangements were made with the fee owner, which was done in this case. All its rights in regard to such streets and roads were obtained from the fee owner. It is not shown just what such easements or permits cost the Power Company, but big or little, how can it be said that the Company has no property right in an easement it has bought and paid for or obtained by prescription from the owner of the fee. The *Cathey* case holds that the use of a highway right of way by a utility is an additional servitude for which the fee owner is entitled to compensation. The easement of the Power Company on such rights of way may be abolished by the Commission, but the taking of such easement must be by eminent domain proceedings and just compensation allowed, and not by the exercise of the police power with no compensation.

Now, as to the rights of the Power Company to use the streets within the city limits to maintain its poles and wires. The Company has poles on the right of way of the streets by virtue of a contract with the city. Under the terms of this contract the Power Company obligated itself to spend thousands of dollars in placing the poles and wires in the city. There is no contention that the Company has not fulfilled its obligation to the letter. In fact, the Company would be liable for breach of contract if it had failed to comply with the conditions of the agreement. In these circumstances could the city officials change their minds the day after the Power Company had completed the installation of its equipment and

in the exercise of the police power inform the Company that it must get its equipment out of the city? The answer is "No". The Power Company, under the terms of the contract, had acquired a property right, and if it was to be deprived of such right the proceeding would have to be by eminent domain. We fail to see how the State would have any more authority to exercise the police power than would the city. Appellant has cited several cases that appear to be contrary to the view herein expressed, but in the case at bar it does not appear to be necessary that the Commission use the police power to eject the Power Company from the right of way of the by-pass, and as heretofore pointed out this Court has held that public necessity must exist to justify the use of the police power.

We do not reach any question as to the amount or measure of damages, because the parties have agreed by stipulation on the amount of damages sustained by the Power Company.

Affirmed.

PAUL WARD, Associate Justice, dissenting. When the Commission undertook to build the By-pass along or across certain streets in the City of El Dorado, along certain streets in a dedicated town outside the limits of El Dorado, and along a public road, it became necessary to have certain poles belonging to the company removed from the affected streets and roads. It is conceded that the company would have the right to replace its poles at adjacent locations without having to pay anything for the privilege of doing so. The only question involved here is whether the Company or the Commission should pay the cost of relocating the poles.

It appears to me that the majority opinion completely evades this pivotal question. I make this statement because all of the authorities relied upon by the majority go only to the proposition that a utility Company, having once obtained a franchise and having located its poles within a city, town or public road, has acquired such a

property right that it cannot be taken away without compensation. In other words, the majority seem to be laboring under the misapprehension that the Commission (which here is the same as the State of Arkansas) is attempting to take away entirely the company's right to do business under its franchise. Later I will refer to the authorities relied upon by the majority.

As stated before, the decisive question is whether the company or the Commission shall pay for removing the poles to another location or locations which will be furnished to it without cost. The authorities holding that the company must pay for the relocation of its poles at its own expense are numerous and unanimous to that effect. See: *Rockland Water Co.* v. *City of Rockland,* 83 Me. 267, 22 A., 166; *Belfast Water Co.* v. *City of Belfast,* 92 Me. 52, 42 A., 235; *Brunswick Gas Light Co.* v. *Brunswick Village Corporation,* 92 Me. 493, 43 A., 104; *Readfield Telephone and Telegraph Co.* v. *Cyr,* 95 Maine 287, 49 A. 1047; *First National Bank of Boston* v. *Maine Turnpike Authority,* 153 Me. 131, 136 A. 2d 699; *Lynn and Boston Railroad Company* v. *Boston and Lowell Railroad Corporation,* 114 Mass. 88; *New Orleans Gas Light Co.* v. *Drainage Commission of New Orleans,* 197 U. S. 543; *Scranton Gas & Water Co.* v. *Scranton City,* 214 Pa. 586, 64 A. 84; *New Orleans Public Service* v. *City of New Orleans,* 281 U. S. 682, 687; *New York City Tunnel Authority* v. *Consolidated Edison Company of New York, Inc.,* 295 N. Y. 467, 68 N. E. 2d 445; *Chicago, Burlington & Q.R.R. Co.* v. *City of Chicago,* 166 U. S. 226.

The clear and emphatic holdings of the above authorities are to this effect: While the franchise or privilege of a utility, once having made its installations, to do business in a city, town or along a public road is a property right which cannot be taken away without compensation, yet such utility acquires no such property right to erect and maintain its installations or poles at any particular place; such utility must remove its installations at its own expense when the public convenience and welfare demands such removal, and; the State, representing all the people,

under the exercise of its police power can require said installations to be removed to other locations at the expense of the utility. A careful reading of the several authorities cited in the majority opinion reveals nothing to the contrary. I shall briefly comment on these authorities cited by the majority.

The quotation from 18 Am. Jur. at page 790 deals generally with the property rights of a franchise and not with the property rights of any particular location of installations. In point regarding locations see 18 Am. Jur., § 18, page 421, and § 161, page 792; the *Southwestern Bell* case holds that the city has no power to require a utility "to remove said poles as a public nuisance per se." In the *Natural Gas* case it was sought to enjoin the company "from furnishing natural gas to the inhabitants of the town of Norfleet and to require it to remove its pipelines and gas mains from the streets and alleys of the town of Norfleet," and; the *Cathey* case has no bearing on this case except in respect to the "public road". Its holding is merely to the effect that if property owners along the public road were in any way damaged by the installation of the Company's poles along the right-of-way, they would have a suit for damages. It is not contended by anyone that the company secured permission from the property owners in this case to locate its poles along the road and certainly not at any particular spot or location. It appears from the stipulations in this case that if the property owners ever had any right to maintain such a suit against the Company that right has now been barred by the statute of limitations. I find nothing in the *Cathey* case which negates the right of the State, under its police powers, to require the Company to move its poles to another location on the new right-of-way at its own expense when it becomes necessary in the interest of progress and in the interest of the general welfare of the people.

Justice HOLT joins in dissent.