COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,

v.

LOUISVILLE WATER COMPANY, Appellee.

Court of Appeals of Kentucky.

March 31, 1972.

Robert A. Becht, Dept. of Highways, Louisville, Don Duff, Dept. of Highways, Frankfort, for appellant.

Samuel R. Wells, Thomas W. Speckman, Marshall, Cochran, Heyburn & Wells, Louisville, for appellee.

PALMORE, Judge.

The state highway department appeals from a judgment requiring it to pay the Louisville Water Company $120,465.20 as the cost of restoring a system of water mains disrupted by the construction of In-

terstate Highways 64, 65 and 71 along River Road in Louisville. The basic question is whether the principle of Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308 (1954), applies. We think it does.

The water company was incorporated in 1854 by legislative act. Its charter authorized it to lay pipes in the public streets in such manner as not to obstruct or impede their use for travel, and in the construction of its facilities the company was obligated to provide an abundant supply of water for fire protection. By later enactment it was required to furnish water to the public fire hydrants free of charge. Cf. KRS 96.270.

In order to provide an abundant supply of water at an adequate pressure for fire protection it is necessary for the company to maintain what are called grid systems, in which the mains are so interconnected that if one or more are cut off the others will insure a continuous flow to the same area. Prior to the highway construction project involved in this case the company's grid system serving the fire hydrants on its main along River Road consisted of intersecting mains at Jackson, Clay, Shelby, Campbell, Cabel and Adams Streets. A similar grid system supported a main along Spring Street at the intersections of Payne, Locust and Arlington Streets.

The interstate highway project required that River Road be relocated to the north and that the six intersecting streets named above be closed. It was not practicable for the existing mains under the highway right of way to be extended to River Road as relocated and to be so maintained and used. Hence it was necessary for the supporting grid system to be rearranged and reconstituted by the construction of new mains connecting with the relocated River Road. A new main had to be laid along the new portion of River Road itself, of course, but the water company concedes that this was purely a matter of street relocation and that it was required to move the River Road main at its own expense.

A comparable result occurred at Spring Street, in that the connecting mains comprising the grid system were made useless and new connections became necessary. At both the River Road and Spring Street locations the new mains for which the water company sought reimbursement do not supply revenue-paying customers, but are necessary solely to carry out the company's statutory obligation of furnishing an ample supply of water to the public for purposes of fire protection.

The rule of law stated in Southern Bell Tel. & Tel. Co. v. Commonwealth, Ky., 266 S.W.2d 308 (1954), is that a utility company must relocate its facilities in the public streets when changes are required by public necessity or convenience. The risk of loss occasioned by such changes is on the utility. The water company concedes that principle but contends it does not apply to this case because, principally, its grid systems were not being maintained for its customers, but for the purpose of fulfilling a non-revenue-producing obligation imposed by law. It draws a further distinction on the theory that an action necessitating an *abandonment* vis-a-vis the *relocation* of facilities destroys the utility's easement and amounts to a taking of property. See Arkansas State Highway Comm. v. Arkansas Power & Light Co., 231 Ark. 307, 330 S.W.2d 77 (1960); In re Gillen Place, 304 N.Y. 215, 106 N.E.2d 897 (1952); and Postal Telegraph-Cable Co. v. Pennsylvania Public Utility Comm., 154 Pa.Super. 340, 35 A.2d 535 (1944).

We are not persuaded by the distinctions or by the authorities cited. There is nothing in the statement of the fundamental principle that confines it to revenue-producing facilities, nor is there any difference in theory between a relocation and an abandonment. Whatever may be its obligations to its customers or to the public, the utility's dependence upon the public streets as a location for its facilities is subject to whatever expense and inconvenience may result to it from a change in

what the public reasonably chooses to do with respect to those streets. We recognize the merit in the argument that this particular cost ought to fall on the general public, or the traveling public, rather than the users of water in the Louisville area, but if there is to be a new principle of law for this type of case we see no compelling reason for it to be invented by the courts.

■ Another contention is that the water company's right to use the streets is supported by a consideration in the form of its obligation to provide an adequate supply of water for fire protection and its duty under KRS 96.270 to furnish water free of charge. If the company's use of the streets were a simple contract right obtained in exchange for an identifiable *quid pro quo*, the argument might be valid. But there are other privileges enjoyed by the company under its charter, the first and foremost of which is its exclusive franchise to do business. If the existence of duties had the effect of conferring upon the water company rights in the streets that could not be disrupted by the public, then the simplest relocation would not be permissible without compensation. As for KRS 96.270, the obligation to provide water free of charge is related specifically to an exemption from city taxes.

■ City of Louisville v. Louisville Water Co., 105 Ky. 754, 49 S.W. 766 (1899), in which it was held that the City of Louisville could not require the water company to obtain a permit before placing a water main in one of the city streets, holds no lesson for this case. Simply stated, the argument is that if the water company's rights are such that the city could not prevent its using the streets, then they must be such that the state cannot terminate them, at least without compensation. The answer, we think, is that the state has terminated nothing that would not have been terminated in an ordinary relocation project. Certainly there was no more of a "termination" with respect to the grid system than there was with respect to the wa-

ter main lying under River Road before that street was relocated.

The cause is reversed with directions that a judgment be entered dismissing the action.

All concur.